[S. F. No. 5340. In Bank.—February 10, 1912.]

GEORGE H. BUCK, Respondent, v. D. J. CANTY, Appellant.

Taxation—Sale by State—Amendment of 1905 to Section 3897 of Political Code—Mailing Notice of Sale to Person Last Assessed—Validity of Sale.—Under the amendment of March 1, 1905,

to section 3897 of the Political Code, it is just as essential to the validity of a sale by the state of real property acquired by it for delinquent taxes, to mail the notice required by the amendment to the person to whom the land was last assessed when his last post-office address is known to the tax-collector, as it is to give notice by publication. Both notice by publication and by mail where the last post-office address is known are essential to the validity of the tax-sale.

ID.—PROCEEDINGS FOR SALE INITIATED PRIOR TO AMENDMENT—SALE AFTER AMENDMENT TOOK EFFECT—NOTICE BY MAIL ESSENTIAL TO VALIDITY OF SALE.—A sale by the state of land acquired by it for delinquent taxes, which was actually made after such amendment took effect, is void, if the notice by mail required by such amendment was not given to the person to whom the land was last assessed, when his last post-office address was known to the tax-collector, notwithstanding the proceedings for the sale were initiated under such section prior to its amendment, and the only notice of sale then required by that section was given by publication and the publication thereof was completed prior to the taking effect of the amendment.

ID.—POWER OF LEGISLATURE OVER METHOD OF SALE—EXTENT AND CHARACTER OF NOTICE.—The power of the legislature to control the method by which the state shall dispose of the property acquired by it for delinquent taxes is unquestioned, and involves the right to determine at any time the extent and character of notice which shall be given by the agents of the state before the right to make a sale of it shall attach.

ID.—POLICY OF AMENDMENT.—The obvious policy of such amendment to the section was to afford a better opportunity to the delinquent owner to redeem the property before actual sale by the state by requiring not only notice by publication, but the additional and more efficacious notice by mail under the condition provided for in the amendment.

ID.—OLD SECTION NOT CONTINUED IN OPERATION BY AMENDMENT—PENDING PROCEEDINGS BECOME FUNCTUS OFFICIO.—The re-enactment of section 3897 of the Political Code by the amendment of 1905, without any saving clause as to proceedings theretofore had under the old section, did not operate to continue it in force or to give it vitality for any purpose whatever, and proceedings pending under the old section became *functus officio* immediately after the amendment went into effect.

ID.—STATE HAS NO VESTED RIGHT IN METHOD OF SALE—CHANGE IN REMEDY.—The state has no vested or fixed right to sell property under the old section or any other section which was impaired by such a construction of the amendment. Such amendment simply affects a change in the remedial method by which the right may be exercised.

Id.—Retroactive Law Changing Remedy not Unconstitutional.—As the amendment only operates to change the remedy under which the right of sale may be exercised, it is not violative of section 16 of article I, of the constitution, prohibiting the passage of laws which are retroactive in character. The passage of retroactive laws that only affect the remedy and do not disturb vested rights or obligations of a contract are not interdicted by that provision of the constitution.

Id.—Tax-Deed—Recitals—Prima Facie Evidence—Nature of Notice Given of Sale.—Under section 3898 of the Political Code, providing that upon a sale in behalf of the state "the tax-collector must execute a deed to the purchaser reciting the fact necessary to authorize such sale and conveyance, which deed shall convey all the interest of the state in and to such property and shall be *prima facie* evidence of all facts therein" and by virtue of the provisions of the amendment of 1905 to section 3897 of that code, it was the duty of the tax-collector to set forth in the deed, as far as notice is concerned, that it had been published, and either that notice by mail had been given, or that it had not been on account of the address of the party to whom the land was last assessed not being known.

Id.—Silence of Deed as to Notice by Mail—Proof of Notice on Trial.—When such matters are set forth in the deed it is *prima facie* evidence of the truth of the facts recited, but when the deed is silent upon the matter of notice by mail, if the deed is not void on account of the absence of such recital, it becomes at least incumbent on the party asserting title under it to make proof at the trial of such matters in support of his tax-deed. In the absence of such recital or proof his asserted title fails.

Id.—Findings—Particular Finding Sustaining Judgment.—Where a particular and uncontested finding by itself warrants the judgment rendered, objections raised on appeal as to the other unrelated findings or matters of evidence are immaterial.

Id.—Quieting Title—Refund of Amount Paid at Tax Sale as Condition of Quieting Title Against Tax-Deed—Failure to Raise Question on Trial.—In an ordinary action to quiet title, in which the defendant answers by a general denial, and sets up title in himself under a deed from the state based upon a delinquent tax-sale, without either pleading, or otherwise suggesting at the trial, that the plaintiff had failed to do equity in that he had not offered to refund him the amount of taxes, etc., paid by him at the tax-sale, a judgment in favor of the plaintiff will not be reversed merely because it omits to order such amount to be refunded.

APPEAL from a judgment of the Superior Court of Fresno County and from an order refusing a new trial. George E. Church, Judge.

The facts are stated in the opinion of the court.

Carter & Carter, Stanton L. Carter, Royle A. Carter, and Milton M. Dearing, for Appellant.

Frank H. Short, F. E. Cook, and Edward C. Harrison, *Amicus Curiœ*, for Respondent.

LORIGAN, J.—This is an action to quiet title to lands in Fresno County of which plaintiff is conceded to be the owner, unless, as is claimed, by defendant, the latter acquired title thereto under a tax-deed from the state.

The trial court found this tax-deed to be void and entered judgment in favor of the plaintiff from which, and an order denying his motion for a new trial, defendant appeals.

The land in controversy was sold to the state on July 3, 1896, on account of delinquent taxes for the year 1895, and on March 31, 1905, a deed to the state therefor was made by the tax-collector. On April 6, 1905, written authorization was issued by the controller of the state directing said tax-collector to sell said property as required by section 3897 of the Political Code, as amended in 1897. Pursuant to the section referred to the tax-collector published notice that a public sale of the property would be made by him on May 16, 1905, on which date it was made, the defendant becoming the purchaser, and on June 6, 1905, receiving from the said tax-collector the tax-deed, the validity of which is in question.

On the trial both the deed to the state, and the deed from the state under the tax-sale proceedings, were attacked by respondent and the findings of the court were that both were void.

The same claim of invalidity as to both is relied on here by respondent in support of such findings in response to the attack made upon them by the appellant. We deem it necessary, however, to consider only the question of the validity of the sale under which the deed from the state to the appellant was made, and restricting that consideration to the question whether the jurisdictional prerequisites to a valid sale of the property by the state were observed.

Section 3897 of the Political Code, as amended in 1897, provided, as to property acquired by the state under delin-

quent tax-sales and which the controller might order sold by the tax-collector, that in making sale under such authorization the tax-collector "must give notice of such sale by first publishing a notice for at least three consecutive weeks in some newspaper published in the county or city and county, or if there be no newspaper published therein, then by posting a notice in three conspicuous places in the county, or city and county . . . " Thus the section stood at the time the controller on April 6, 1905, issued his authorization and when the tax-collector commenced the publication of his notice of sale thereunder. The section was, however, amended by the legislature at its session in 1905. The amendment, while still providing for a notice of sale by publication and the contents of the notice, added this additional requirement as to notice, to wit: "It shall be the duty of the tax-collector to mail a copy of said notice, postage thereon prepaid, to the party to whom the land was last assessed next before the sale, if such address is known." This amendatory act was approved by the governor on March 1, 1905, which was over a month prior to the date of the authorization of the controller directing the sale, and necessarily, at least, for as long a period before any publication of the notice could be made by the tax-collector, and the act was in effect for fifteen days prior to the date fixed for the sale, which was noticed for May 16, 1905.

The tax-deed here in question from the state to the defendant shows that the only notice given was by publication commenced and completed under the section as it stood prior to the amendment and the court found, and it is conceded, that no other notice was given by the tax-collector.

On this appeal two questions are presented and arise under the amendment: 1. Is it a jurisdictional prerequisite to a valid tax-sale that in addition to publication of notice of sale a copy thereof shall be mailed by the tax-collector to the last known post-office address of the party to whom the land was last assessed, and 2. If it is a jurisdictional prerequisite, was it necessary to give it where, in the instant case, the sale was actually made after the amendment took effect but where notice of sale was published under the old section, and the publication completed prior to the taking effect of the amendment.

As to the first point. Since this appeal was taken it was decided by this court that it is just as essential to the validity of a sale under the amendment to section 3897, to mail the notice to the person to whom the land was last assessed when his last post-office address is known to the tax-collector, as it is to give notice by publication; that both notice by publication and by mail where the last post-office address is known are essential to the validity of the tax-sale. (*Smith* v. *Furlong*, 160 Cal. 522, [117 Pac. 527].) This matter is there fully discussed and nothing further need be said on that subject.

As to the second point. Appellant insists that it was not intended that the amendment should operate retrospectively and that as notice by publication was all the section required at the time notice was given, and it had been fully given under it when the amendment went into effect, this was a sufficient compliance with the statute in order to authorize and validate the subsequent sale; that by the tax-collector's deed to it under delinquent tax-sale the state had acquired a vested right in this property and a vested right to sell it under the statute as it stood before the amendment, which right to sell it had proceeded to exercise, and the amendment cannot be given retroactive construction so as to impair or abridge those rights.

We do not think those points are well taken.

Prior to a sale of property acquired by the state at a delinquent tax-sale the only persons having relations to each other with respect to the property are the state and the delinquent owner. Property-owners owe the duty to the state to pay the taxes which it has levied upon their property, and on their failure to do so, the state takes their property in aid of the collection of its revenues. While provision is made for the sale of such property on behalf of the state by its public officers after the state has held title to it for five years, the settled policy of the state is to afford an opportunity to the delinquent owner to redeem the property at any time before an actual sale by the state has been made. To this end it has provided that the owner shall, during a period of five years, have an absolute right to redeem, and has further provided by section 3817 of the Political Code, that he shall have this right to redeem "at any time . . . before the state shall have disposed of the same," which, of course, means before an

actual sale by the state. The authority of the legislature to provide a system under which the state may be enabled to collect its revenues, its right to provide for the acquisition by the state of the property of delinquent taxpayers, for its redemption after such acquisition or its sale and (as to the latter) the method and procedure under which it shall be sold on behalf of the state by its agents may not be questioned. These are all matters within the control of the legislature and this control over the method by which the state shall dispose of the property acquired by it for delinquent taxes involves the right to determine at any time the extent and character of notice which shall be given by the agents of the state before the right to make a sale of it shall attach. Having plenary power over the matter, the legislature had provided under the old section—in harmony with the policy of according an opportunity to the delinquent owner to redeem at any time before the sale by the state took place—that a sufficient last opportunity would be given him by a publication alone of the notice of intended sale.

The obvious policy of the amendment to the section was to afford a better opportunity to the delinquent owner to redeem the property before actual sale by the state by requiring not only notice by publication, but the additional and more efficacious notice by mail under the condition provided for in the amendment.

The amendment contained no saving clause as to proceedings theretofore had under the old section. The section as amended was re-enacted and published in conformity with section 24 of article IV of the constitution, and as to such a re-enactment it is said in *Billings* v. *Harvey,* 6 Cal. 381: "If a statute or section of a statute is re-enacted, it is totally inconsistent with the idea that the old statute or section still remains in force or has vitality for any purpose whatever. The re-enactment creates a new rule of action and even if there was not the slightest difference in the phraseology, the latter alone can be referred to as the law, and the former stands to all intents and purposes as if absolutely and expressly repealed." (*Bensley* v. *Ellis,* 39 Cal. 309; *Huffman* v. *Hall,* 102 Cal. 26, [36 Pac. 417].)

So that within the rule of these authorities, before the sale here in question was actually made the section which was in

force and under which the preliminary jurisdictional steps to authorize it had been taken had ceased to exist. It had no force as part of the law under which a sale could be made. An entirely different method of notice had been provided and was in operation and the proceedings taken under the old section became *functus officio* immediately after the amendment went into effect.

But it is insisted by appellant that to construe the amendment requiring the additional notice to be applicable to all sales made after it went into effect, although the requisite notice under the old section had still been given and a right to sell thereunder had been acquired, would be violative of the constitutional provision (art. I, sec. 16) prohibiting the passage of laws which are retroactive in character; and it is also insisted that the amendment, as sought to be applied to this sale, is open to a further objection under the same constitutional provision as an impairment or abridgement of a right which was vested in the state to make a sale of this property upon the notice provided for and given under the old section.

As to this claim of impairment of a right there was no vested or fixed right in the state to sell property under the old section or any other section. That such a right existed is merely the assumption of counsel. The legislature has full control over the sale of property belonging to the state, which it may direct sold, and to regulate or change at any time the method of its disposition. If there was any merit in this claim advanced by counsel, however considered, it would be sufficient to say that the amendment does not at all impair the right of the state to sell. In furtherance of the policy of the state, and to afford better opportunity of redemption by the delinquent owner before actual sale, the legislature has simply provided for additional notice to be given before a sale may be made. This does not impair the right of the state to sell. That right is still secured to it. The amendment simply affects a change in the method by which the right may be exercised; a change in the remedy whereby additional opportunity is given to the former owner before an actual sale to regain his property by redemption without impairing the right of the state to proceed to sell in case he does not. Nor is there any force in the objection to the amendment on the

ground that it is retroactive. As we have said, this amendment only operates upon the remedy under which the right of sale may be exercised. It is well settled that the legislature may pass a statute which shall be retroactive in character, and open to no constitutional objection upon that account, when it affects the remedy only and does not disturb vested rights or obligations of a contract.

"Remedial statutes which are retrospective but do not impair contracts or disturb vested rights are not unconstitutional, and the legislature may from time to time alter, change or modify the remedy provided that in so doing they do not affect the right; but whenever they so far alter the remedy and impair property rights or change or render the right scarcely worth pursuing, they necessarily impair the obligation of the contract upon which such right is founded." (*Teralta Land etc. Co.* v. *Shaffer,* 116 Cal. 518, 523, [58 Am. St. Rep. 194, 48 Pac. 613].)

As pointed out, this amendment does not interfere with the right of sale by the state. It is addressed to the procedure to be taken in exercising the right. It affected merely a change in the remedy which it was within the power of the legislature to regulate.

That an amendment of the character here under consideration affects merely the remedy and hence is open to no constitutional objection either on account of retroactive character or as impairing rights, is settled in *Oullahan* v. *Sweeney,* 79 Cal. 537, [12 Am. St. Rep. 172, 21 Pac. 960], (discussed in *Johnson* v. *Taylor,* 150 Cal. 201, [119 Am. St. Rep. 181, 10 L. R. A. (N. S.) 818, 88 Pac. 903]).

In that case there was involved an amendment to section 3785 of the Political Code, [Stats. 1891, p. 133], which amendment provided that a purchaser at tax-sales should, thirty days previous to the expiration of the time for redemption, or thirty days before he applies for a deed, give notice to the owner of the property purchased, or the occupant of it, of the time when the right of redemption would expire or when the purchaser will apply for a deed, and unless he did so the owner of the property would have the right of redemption indefinitely until such notice was given and the deed applied for. When the tax-sale in that case was made section 3785 provided that a redemption could be made in twelve months

and if not made the purchaser could obtain his deed without notice to the owner. The point made in the case was that it was not within the power of the legislature to extend the time for redemption on sales which had been made previous to the amendment; that the attempted extension of the period as to them impaired the validity of the contract. It was held that the amendment requiring notice applied to applications for deeds on sales made before as well as after it took effect, and to the claim that it impaired the validity of a contract, it was answered that the change affected the remedy merely which was within the control of the legislature; that the purchaser still could obtain his deed at the expiration of the year by taking the proper proceeding under the amendment.

The same principle applies here. The state may still sell the lands. The method to be employed, the procedure to be taken as to notice is changed, but this affects the remedy merely, not the substantive right to sell which may still be enforced under an ample remedy provided therefor.

Reaching the conclusion then that the amendment was in effect and operation before and at the time the sale in question took place, it follows that as notice of the sale had not been given by the tax-collector as required by the amendment, no jurisdiction to make the sale was acquired and the deed to appellant purporting to be made thereunder was void.

There was no evidence in this case as to whether or not the name of the party to whom the land was last assessed next before the sale appeared on the assessment-roll. It only appears that subsequent to 1895 the land was each year assessed to respondent and the taxes paid by him. In fact, the matter of such address being known, or not, was not gone into on the trial and it was found and conceded that no notice other than by publication was attempted to be given.

Section 3898 of the Political Code provides that on receipt of the amount bid on a sale in behalf of the state "the tax-collector must execute a deed to the purchaser reciting the fact necessary to authorize such sale and conveyance, which deed shall convey all the interest of the state in and to such property and shall be *prima facie* evidence of all facts recited therein." Under this section, and by virtue of the provisions of the amendment we have been considering, it is made the duty of the tax-collector to set forth in a tax-deed—as far as

notice is concerned—that it had been published, and either that notice by mail had been given, or that it had not been on account of the address of the party to whom the land was last assessed not being known. When these matters are set forth in the deed it is *prima facie* evidence of the truth of the facts recited, but when, however, the deed is silent upon the matter of notice by mail—the giving of which when the condition for it exists is just as essential to the validity of the sale and tax-deed under it as notice by publication—if the deed is not void on account of the absence of such recital, it is at least incumbent on the party asserting title under it to make proof of these matters in support of his tax-deed. When there is a recital in the deed it is *prima facie* evidence of the fact but this is only made so by virtue of the statute and when there is a recital. If there is no recital of a matter affecting the jurisdiction or power of the tax-collector to make a valid sale and execute a valid deed and which, if inserted would by force of the statute constitute *prima facie* evidence, the common-law rule prevails, and it is essential that the person asserting title under the tax-deed shall make proof of the facts necessary to support its validity. In Blackwell on Tax Titles, in considering the tax-deed from a common-law standpoint, it is said at section 845: "This deed, according to principles of the common law, is simply a link in the chain of the grantee's title. It does not *ipso facto* transfer the title of the owner as in grants from the government or in deeds from man to man. The operative character of it depends upon the regularity of the anterior proceedings. The deed is not a title itself nor even evidence of it. Its recitals bind no one. It creates no estoppel on the former owner and no presumption arises on the mere production of the deed that the facts upon which it is based had any existence." The rule at common law has by virtue of section 3898 been changed to the extent of making the recitals of fact necessary to authorize the sale *prima facie* evidence of such authorization. When there is no recital on the subject the common-law rule obtains and the claimant under a tax-deed must make proof of the facts which authorized the sale and which sustain the validity of his tax-deed. No effort in this behalf was made by appellant.

An attack is made by appellant on a number of other find-

ings made by the court and rulings respecting the admission of evidence. But assuming that all these points are well taken, it would not warrant a reversal of the judgment or the order denying a new trial. The finding that the only notice given by the tax-collector was by publication under the old section is entirely separate and distinct from any other finding made in the case, and does not rest for its sufficiency on any of the other findings which are attacked, or on any testimony the admission of which appellant assigns as error. Under these circumstances, as this finding of itself warranted a judgment in favor of plaintiff against the asserted title of appellant under the tax-deed from the state, it is immaterial to consider other findings or matters as to evidence which have no relation to and could not affect this particular uncontested finding.

Appellant makes the further point that judgment should not have been awarded respondent without requiring the latter to refund to appellant the amount of taxes, penalties, charges, and costs paid by him at the tax-sale, under the general rule that "he who seeks equity must do equity" (1 Pomeroy's Equity Jurisprudence, sec. 385). It may be admitted that in a proper case and where the point is properly presented to the trial court, such reimbursement should be ordered. As the question is involved in other cases now pending in this court under submission, we do not here discuss it. In the present case, we do not think the record shows that the question was presented to the court below. Under our rules of pleading in actions to quiet title, the plaintiff need not set out the particulars of the claim of the defendant which he is attacking. He may merely allege that the defendant asserts some interest or claim which is without right. This the plaintiff did and nothing more. The complaint, therefore, does not show that there was any equitable right in the defendant or duty justly owing to him from the plaintiff upon which the rule above quoted could be invoked. The equity of the defendant not being apparent on the face of the complaint, the only other way by which it could be presented would be by setting it up in the answer. The defendant made no such answer. He merely denied plaintiff's title and alleged in general terms that he was himself the owner. By leave of court, after the trial and before the decision below, he filed an amendment to his an-

swer. In this he alleged that he was the owner under and by virtue of a deed from the state based upon a delinquent tax-sale, that the plaintiff's claim to the land was without right, and he thereupon asked that plaintiff take nothing and that the defendant be adjudged the owner and the plaintiff be enjoined from asserting any title or claim to the land, and, for such other and further relief as should be meet and proper. In setting out his title under the deed from the state, he alleged that he had paid to the state as the purchase price of the land the sum of $25.56. The findings declare this allegation to be true. The record does not show that this money was applied on taxes, or that the defendant paid any other sum. The fact of such payment is alleged merely as one of the incidents leading up to the defendant's acquisition of the title, and not as a basis for a lien on the land or claim against the plaintiff. Perhaps such payment might have been set up as a basis for the claim that the judgment should provide for its repayment. If, on the trial, the point had been urged and judgment for repayment given accordingly, it is probable that the judgment would not have been reversed on appeal by plaintiff on the ground that there was no pleading to support it. However this may be, it is clearly apparent from the answer as a whole and from the proceedings at the trial that the allegation was not made as a basis for such relief and that the claim for such relief was not brought to the attention of the trial court. The case comes within the familiar rule that a judgment will not be reversed on appeal because of the failure of the lower court to give relief not embraced in the pleadings and which it was not asked to give, that is, in effect, for an error which the trial court did not make.

The judgment and order appealed from are affirmed.

Shaw, J., Henshaw, J., Angellotti, J., and Melvin, J. concurred.

Rehearing denied.