[S. F. No. 5404. In Bank.—March 25, 1912.]

## OTIS E. RIMMER, Respondent, v. W. J. HOTCHKISS et al., Appellants.

TAXATION—AMOUNT FOR WHICH LAND WAS SOLD TO STATE—RECITALS IN DEED NOT EVIDENCE OF AMOUNT DUE.—The recitals in a deed of land sold to the state for delinquent taxes are not evidence of the amount of taxes, costs, and charges actually due, and a recital of the amount for which the property was sold to the state furnishes no evidence that such amount was in excess of the actual amount due for taxes, costs, and charges.

ID.—ASSESSMENT OF IMPROVEMENTS ON LAND—SEPARATE CHARGE OF FIFTY CENTS NOT AUTHORIZED.—Section 3770 of the Political Code, directing the tax-collector to collect, in addition to the taxes due

on the delinquent list, together with the penalties for delinquency, "fifty cents on each lot, piece, or tract of land separately assessed, and on each assessment of personal property," does not authorize him to collect a charge of fifty cents on account of the assessment of the improvements situated on the land assessed, notwithstanding such improvements, by section 3627 of the Political Code, are required to be assessed separately from the land.

Id.—Sale for Excessive Amount Invalidates Deed.—The inclusion in the amount for which land was sold to the state for delinquent taxes of a charge of fifty cents on account of the assessment of the improvements on the land renders such sale excessive, and invalidates it and the deeds founded thereon.

Id.—Quieting Title against Invalid Tax-Deed—Decree—Failure to Provide for Refund of Taxes Due—Appeal.—A decree quieting title to land against an asserted claim founded on an invalid tax-deed from the state, will not be reversed for the failure of the trial court to provide therein for the payment to the defendant of the amount of money expended for the taxes, costs, and charges actually due, where no right to such reimbursement was asserted by the defendant in the trial court, either by pleading or otherwise.

APPEAL from a judgment of the Superior Court of Fresno County and from an order refusing a new trial. George E. Church, Judge.

The facts are stated in the opinion of the court.

Carter & Carter, Royle A. Carter, and John A. Shishmanian, for Appellants.

Frank Kauke, for Respondent.

ANGELLOTTI, J.—This is an appeal by defendants from a judgment in favor of plaintiff in an action brought by him to quiet his alleged title to two parcels of land in Fresno County, and from an order denying defendants' motion for a new trial.

The complaint contained simply the general allegations appropriate in an action to quiet title to land. The answer of defendants denied these allegations, and alleged ownership in fee in them by virtue of certain alleged tax-sales to the state and an alleged sale by the state to one R. M. Barthold, their predecessor in title. They asked for a decree adjudicating their ownership of the property, and "such other and further relief as is meet and proper, and agreeable to equity." The

trial court found that each and all of the allegations of the complaint are true and that each and all of the denials and allegations of the answer are untrue, and gave judgment decreeing plaintiff to be the absolute owner of the land, free and clear of any claim of defendants.

Evidence introduced by plaintiff was sufficient to show that he is the absolute owner of the property, unless his title "is affected or divested by tax-sales or purported tax-sales and proceedings under which defendants claim title."

The property consisted of two parcels of land, one assessed for the year 1895, to Elizabeth Hurst, the other assessed for the same year to W. W. Hurst. Defendants offered in evidence two deeds from the tax-collector to the state of California, each dated July 8, 1901, purporting to be based on sales of said land to the state made July 3, 1896, for the taxes delinquent on such assessment. Objection was made to each deed on the ground, among others, that the sale to the state was for an excessive amount. The trial court sustained the objection to the deed based on the Elizabeth Hurst assessment, and overruled it in the case of the deed based on the W. W. Hurst assessment. Defendant also offered two deeds from the state to R. M. Barthold, dated April 15, 1905, purporting to convey said lands to said Barthold in pursuance of sales made by the tax-collector at public auction. The trial court sustained the objection to the deed of the Elizabeth Hurst land, and overruled the objection to the deed of the W. W. Hurst land. In rebuttal the plaintiff then showed by the assessment-roll of the county, the assessment of the lands involved for the year 1895, and the taxes levied thereon.

The assessment of W. W. Hurst was one of land, the improvements thereon, and various items of personal property. The tax shown was, on personal property and half of real estate, $10.06, on remaining half of real estate, $3.91, a total of $13.97. The deed to the state specified that the costs and charges which had accrued at the time of the sale to the state amounted to the further sum of $3.71, making a total of $17.68, which was stated in the deed to the state as the amount for which the land was sold to the state. (Pol. Code, sec. 3785, as it stood at the time of the making of the deed, and which required a statement in the deed of the amount for which the property was sold.)

The assessment of Elizabeth Hurst was also one of land, the improvements thereon, and various items of personal property. The tax shown was, on personal property and half of real estate, $5.91, on remaining half of real estate, $3.08, a total of $8.99. The deed to the state specified that the costs and charges which had accrued at the time of the sale to the state amounted to the further sum of $2.84, making a total of $11.83, which was stated in the deed to the state as the amount for which the land was sold to the state.

We cannot look to the recitals in the deeds to the state for evidence of the amount of taxes, costs, and charges actually due (See *Campbell* v. *Shafer, ante,* p. 206, [121 Pac. 737]). There was therefore nothing in either deed to show that the sale to the state was for an excessive amount, or, in other words, that the amount named therein as the amount for which the property was sold to the state was in excess of the actual amount due for taxes, costs, and charges (*Campbell* v. *Shafer, ante,* p. 206, [121 Pac. 737]). The trial court was correct in its ruling admitting the deed of the W. W. Hurst land, and erred in its ruling excluding the deed to the Elizabeth Hurst land. But if the latter deed had been admitted in evidence, it could not have properly affected the result as to the question of title. Each deed was required by law to show the amount for which the property was sold to the state, and, as we have said, the W. W. Hurst deed showed $17.68 as such amount, and the Elizabeth Hurst deed showed $11.83 as such amount. From the evidence afforded by the assessment-roll we are able to ascertain whether either or both of said amounts were excessive, for the costs and charges authorized are all expressly prescribed by law. Consideration of this evidence and of the provisions of our statute relative to costs and charges demonstrates that the amount was excessive in each case by at least fifty cents, unless, under the provisions of section 3770 of the Political Code, providing that "the tax-collector must collect, in addition to the taxes due on the delinquent list, together with the penalties for delinquency, fifty cents on each lot, piece, or tract of land separately assessed, and on each assessment of personal property," the tax-collector was authorized to collect $1.50 in each case in addition to the taxes due and the penalties for delinquency, instead of $1.00 which admittedly he was entitled to charge and collect, fifty cents on

the land and fifty cents on the personal property. The precise question presented is whether a separate fifty-cent charge was authorized on account of the improvements assessed in each case. This exact question was presented to this court in *Canty* v. *Staley,* 41 Cal. Dec. 483, and the majority of the court decided that no such charge was authorized under such circumstances as exist in this case. Referring to the claim made in that case in support of such a charge, the court, through Mr. Justice Melvin, said: "We are unable to agree with this construction of section 3770 of the Political Code. By said section it is provided that the 'tax-collector must collect, in addition to the taxes due on the delinquent list, together with the penalties for delinquency, fifty cents on each lot, piece, or tract of land separately assessed and on each assessment of personal property.' It is clear that improvements are not personalty. They are expressly classified as 'real estate' (Pol. Code, sec. 3617), and while they are to be assessed separately from the land (Pol. Code, sec. 3627), they must be assessed against the particular section, lot or tract of land upon which they are located. Technically then, the land and the improvements are, in one sense, two parcels of real property, but this does not justify a charge of fifty cents against each by the assessor because section 3770 of the Political Code authorizes that charge upon 'each lot, piece, or tract of *land* separately assessed.' There is nothing either in the section itself or in the use of the words 'land' and 'real estate' in that part of the Political Code relating to taxation which justifies the conclusion that the word 'land' was here intended to be used interchangeably with the term 'real estate.' The words 'lot,' 'piece,' and 'tract' apply peculiarly to the land itself and are never employed to describe improvements. That a separate column must be used for the valuation of improvements does not justify the additional charge. It requires two entries to show the division of the tax into installments, yet no extra charge is permitted for that clerical labor. While this additional imposition for the assessment of improvements may be customarily noted by assessors, . . . we cannot let that fact distort the plain, simple English of the statute making the charge of fifty cents applicable to each subdivision of land separately assessed. Each of the respondent's two lots of land was therefore sold for at least fifty cents in excess of the

proper amount." While a rehearing was granted in that case, it was not because of any doubt as to the correctness of the views above quoted, and the justices participating therein are of the opinion that the same correctly state the law on this question. It follows that it must be held that the amounts for which the two parcels of land were declared to be sold to the state and the amounts specified in the deeds as the sums for which they were so sold, were excessive by at least fifty cents in each case. The effect of a sale to the state for an excessive amount is also declared in the opinion in *Canty* v. *Staley,* as follows: "In either view of the matter, whether we hold that the property was sold for fifty cents or fifty-two cents above the price authorized by law, we must find, under the decisions of this court, that the excessive charge invalidated the transaction and that the deeds and delinquent tax-list were therefore properly denied admission in evidence by the trial court. This court has consistently held that where a sale for delinquent taxes is in excess of the amount authorized by law, the party claiming by virtue of said sale can acquire no rights thereunder." (Citing cases.) As to this it is to be said that the rehearing was not granted on account of any doubt as to the correctness of these views, and that the justices who participated therein are of the opinion that it correctly states the law: It follows that the sale to the state was void as to each parcel of land, and that defendants have acquired no interest in the land by reason of the attempted deeds of the state to their predecessor in title which are based thereon.

Upon the question of the right of the defendants to be reimbursed on account of money expended by their predecessor in title, the facts are substantially the same as those stated in the opinion in *Buck* v. *Canty, ante,* p. 226, [121 Pac. 924]. Upon the authority of that case, it must be held that the failure of the trial court to provide for reimbursement does not warrant a reversal.

The judgment and order denying a new trial are affirmed.

Shaw, J., Lorigan, J., Henshaw, J., and Melvin, J., concurred.