[Civ. No. 1566.   Third Appellate District.—June 15, 1918.]

## LEONARD BOOT, Appellant, v. JUD. W. BOYD, Respondent.

FRAUDULENT CONVEYANCES—SALE OF PERSONAL PROPERTY—CHANGE OF POSSESSION.—Under section 3440 of the Civil Code, requiring a change of possession on the transfer of personal property, a sale, to be good against the creditors of the vendor, must be accompanied by an actual and continued change of possession, and this means not a mere formal change, but that the possession of the vendee must be open and unequivocal, carrying with it the usual marks and indications of ownership, and it must be such as to give notice to the world of the claims of the new owner, and must be continuous.

ID.—SALE OF REAL AND PERSONAL PROPERTY — TAKING POSSESSION OF REAL PROPERTY—INSUFFICIENT EVIDENCE OF CHANGE OF POSSESSION OF PERSONAL PROPERTY.—Where real property is sold and a bill of sale for personal property located thereon is at the same time given to the vendee, the fact that the vendee took possession of the

87 Cal. App.—35

real property is not sufficient evidence of a change of possession of the personal property.

Id.—Continuation of Possession by Seller — Suspicious Circumstance.—The fact that a buyer of personal property went upon the land where it was located and checked it off, thus exercising an act of ownership, is only a circumstance in determining whether there was a delivery and change of possession, and the continuous possession by the vendor constituted a suspicious circumstance.

Execution—Exempt Property—Delay in Making Claim—Waiver.— Where personal property is levied on under an execution, a delay of the alleged owner to claim exemption after one month's notice of the seizure constitutes a waiver of the claim for exemption.

APPEAL from a judgment of the Superior Court of Tehama County. John F. Ellison, Judge.

The facts are stated in the opinion of the court.

George R. Freeman, and Frank Freeman, for Appellant.

P. H. Coffman, for Respondent.

HART, J.—Action in claim and delivery, the defendant being the sheriff of Tehama County.

On the ninth day of January, 1915, R. A. Boot and Nora Boot, his wife, in consideration of $15,642.50, by deed conveyed to plaintiff 170 acres of land in Tehama County, spoken of as the R. A. Boot ranch. On the same day said R. A. and Nora Boot executed to plaintiff a bill of sale conveying certain personal property, consisting of mules, horses, wagons, farming implements, etc., it being stated therein that the consideration named in the above-mentioned deed was also paid for the personal property transferred by the bill of sale.

On the thirteenth day of January, 1915, an action was commenced in the superior court of Tehama County by Jesse A. Brown, as plaintiff, against Robert Boot and James A. Boot, as defendants, to recover $2,691.83, the amount alleged to be due on certain promissory notes given by the defendants in said action in connection with a contract between the parties for the sale by said Brown to defendants of land adjoining the Boot ranch. A writ of attachment was issued and delivered to the sheriff, who made return that, on January 18, 1915, he levied upon certain personal property and also upon the Boot ranch. The court afterward ordered the attachment

released as to the personal property, and it was returned to the defendants in said action. On July 7, 1915, judgment was entered in favor of plaintiff, Brown, for $2,691.83; an execution was issued, under which the sheriff levied upon the personal property in question and sold the same for the net sum of $896.95, which money was delivered to the plaintiff in said action.

The present action was brought to secure judgment for the recovery of the possession of said personal property, or for one thousand eight hundred dollars, the value thereof, and for one thousand dollars damages for the alleged wrongful taking of the same. Judgment was in favor of defendant, from which plaintiff prosecutes this appeal.

Appellant states that "but one thing is involved in the action, namely: The validity of the sale, on January 9, 1915, of the property involved, to plaintiff by said Robert A. Boot and his wife. The trial court decided that the sale was invalid because there was no immediate delivery followed by actual and continued change of possession of the property such as is required by section 3440 of the Civil Code, . . . the alleged sale being void as against the execution creditor."

It appears from the testimony that plaintiff, Leonard Boot, resided in Glenn County. He stated that he received the bill of sale above referred to on the ninth day of January, 1915; that, with R. A. Boot and James Boot, he went to the R. A. Boot ranch, where the personal property was, checked off each item on the bill of sale, looked at every article on the ranch, and took possession of it. The property was assessed to him in the year 1915 and he paid the taxes on it. He stated that he authorized all the work that was done on the personal property and paid those who had anything to do with it. On cross-examination he stated that the personal property in question had been on the R. A. Boot ranch and had belonged to R. A. Boot for about two years; that when he took possession of it he did not take any of it away from the ranch, but put Robert (R. A.) Boot in possession of the property as manager and left it in his control. He said that he knew about the transaction in which Robert and James Boot entered into an agreement, about July, 1913, for the purchase from Jesse A. Brown of what was known as the Brown or Westlake ranch, and knew that said Robert and James were indebted to Brown on account of said purchase. Plaintiff remained over-

night at the Boot ranch, on January 9th, and left there the next afternoon. In a few days he returned, looked over the place, and directed certain work to be done. He testified that thereafter he visited the ranch about once a week; that R. A. Boot conducted the ranch for him, and that he paid said R. A. Boot wages for looking after the property. A few hogs and some fruit raised on the ranch were sold by plaintiff after he received the bill of sale.

Jud. W. Boyd, the defendant, testified that on the 11th of September, 1915, he levied upon and took into his possession the personal property in question; that at that time he found the property in the possession of Robert Boot on the Robert A. Boot ranch and took the property from him; that plaintiff was not there at the time.

Jesse A. Brown testified that in 1914, 1915, and down to September 11, 1915, the personal property was in the possession of Robert Boot; that, when farming Brown's ranch, Robert and James Boot had the property there and about the 1st of January, 1915, they moved it to the Boot ranch. The witness stated that he was "about the Boot ranch a good deal" since the 1st of January, 1915, and that Robert Boot had charge of the property; that he never saw any change of possession of it and never saw Leonard Boot exercise any act of ownership or control over it. On cross-examination the witness said that he had been on the Boot ranch but once since said 1st of January, and that at that time he saw Robert Boot and no one else there; that he had seen him going back and forth and had seen him sitting by the gate one day; that he knew that Leonard Boot claimed the property.

Dan Hamilton testified that, in the summer of 1915, he was employed by Robert Boot to work on the Boot ranch and that he worked there for about three months; that he was there on the 11th of September when the sheriff took the property under the execution; that while witness was on the ranch Robert Boot had charge and control of the personal property; that Leonard Boot was there three or four times but did nothing with the property that witness knew of; that plaintiff worked one day in the dry-yard and he worked picking fruit for the Chinamen a day or two.

Elmer Oakes, who lived across the road from the Boot ranch, testified that, since the 1st of January, 1915, the prop-

erty taken by the sheriff had been in the possession of Robert and James Boot and that he saw no change in the possession of it during that time.   Ray Barker testified to the same facts.

In rebuttal, R. A. Boot testified that during the summer of 1915 he was conducting the ranch for Leonard Boot, who paid all the bills incurred.

The single point submitted here for decision involves an attack upon the finding that there was not an immediate and continuous change of possession of the chattels from the owner to the purported vendee, within the meaning and intent of the law.   The case as made by the evidence was one peculiarly for the decision of the court, before which it was tried without a jury.   In other words, we do not see our way clear to declare, as a matter of law, that there was at any time a change of possession of the chattels involved from R. A. Boot and wife to Leonard Boot.   We, therefore, adopt and approve the following portion of the learned trial judge's opinion rendered and filed in deciding the case, and which is incorporated in the brief of respondent.

"The sheriff as a defense sets up his official capacity, and that as such sheriff he took the property under attachment (execution) in a suit wherein one Jesse A. Brown was plaintiff and Robert Boot and James A. Boot were defendants, and at the time he took the same said property belonged to Robert Boot.

"The plaintiff claims that before levy thereon by the sheriff he had bought, for a valuable consideration, all the said property from said Robert Boot, and that it was his property, and not liable to process in the suit of Brown against Boot.

"I have considered the evidence carefully and the authorities cited by the respective parties, and am satisfied that the plaintiff has not shown title good against the process held by the sheriff in said action.

"Section 3440 of the Civil Code provides: 'Every transfer of personal property, other than a thing in action, or a ship or cargo at sea or in a foreign port, and every lien thereon, other than a mortgage, when allowed by law, and a contract of bottomry and *respondentia,* is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore

void, against those who are his creditors while he remains in possession.'

"The supreme court, in considering this section, has held uniformly that a sale of personal property to be good against the creditors of the vendor must be accompanied by an actual and continued change of possession, and that this means not a mere formal change, but that the possession of the vendee must be open and unequivocal, carrying with it the usual marks and indications of ownership by the vendee, and it must be such as to give notice to the world of the claims of the new owner, and must be continuous.

"From the evidence introduced in this case, about which there is no conflict, it is clear that if any person who had been familiar with the property and its ownership a week before the alleged sale to the plaintiff, had visited the premises a week thereafter, he would have seen or noticed nothing in the management of the property, its possession and location that would have given him any notice that there had been a change of ownership from Mr. Robert Boot to the plaintiff in this action.

"The case seems clear to the court and judgment and findings are ordered for the defendant."

The position of the appellant is that the fact that the land on which the personal property involved herein was kept was conveyed and possession thereof taken by him while the personal property was still on the said land and at the time the bill of sale for the former property was delivered to him amounted to the taking by him, and, therefore, a change of the possession of the personal property. We do not think this was sufficient to evidence that change of possession of personal property which the law requires. Nor do we find that it is so held in any of the many cases cited by the appellant in support of his position.

In *Banning* v. *Marleau*, 101 Cal. 238, [35 Pac. 772], the gist of the decision as to the question whether there was a change of possession of the chattels therein involved is, generally stating it, that the findings were not specific enough to show upon what theory the case was decided—"that is, whether it was upon the theory that plaintiff was not the owner of the property in any sense, or upon the theory that a sale of said property by Hannon to plaintiff was void as against creditors for want of delivery and an immediate and

continuous change of possession under section 3440 of the Civil Code.''

In *Porter* v. *Bucher*, 98 Cal. 454, [33 Pac. 335], the plaintiff, who was the wife of one Howard B. Porter, with whom she lived on a farm upon which her husband had duly filed a declaration of homestead, was the owner as her separate property of a hundred or more head of cattle, which were kept on said homestead. The plaintiff bought from her husband a large quantity of hay grown on the homestead for the purpose of feeding it to her cattle. After the hay was cut and stacked in corrals on the premises, the plaintiff and her husband together went to the stacks, ''estimated the quantity of hay, agreed upon the price, and the husband, by words, delivered the hay to the appellant (his wife), who thereupon closed and fastened the gates of the corrals, made a payment of ten dollars, and a few days later made another payment of thirty dollars, and, in accordance with the agreement of sale, assumed the payment of certain specified debts of the husband, amounting, with the cash payments, to about eight hundred and seventy dollars, and which debts she afterward paid.'' The husband later became an insolvent debtor, having been duly so adjudicated, and thereupon the assignee of the estate of the husband made a demand for and finally seized the hay as being a part of the husband's assets. At the trial of the action by the wife in claim and delivery for the return of the hay to her possession, the trial court instructed the jury that there was no evidence justifying a finding that there was immediate delivery of the possession of the property followed by an actual and continued change of possession. The supreme court, reversing the judgment entered upon the verdict against the plaintiff, merely held that the evidence was such that the question whether there was the delivery and change of possession required by the law to make the sale valid as against creditors should have been submitted to the jury.

The many other cases cited by appellant are, as we understand them, no more in point in this case than those to which we have above given special attention.

As above stated, we think it is absolutely correct to say here, as is said in *Porter* v. *Bucher, supra,* ''that what constitutes an immediate delivery and an actual and continued change of possession is a fact to be determined upon the evidence in each particular case.''

Much stress is, however, laid upon the testimony of the plaintiff that, upon buying the farm and the personal property, he went to the land and checked off the personal property, thus exercising an act of ownership over it. But that was only a circumstance to be considered by the court in determining whether there was a delivery and change of possession. The other fact remains that in point of fact the purported vendor of the property continued in the actual possession of the same. In *Hickey* v. *Coschina,* 133 Cal. 81, [65 Pac. 313], the plaintiff bought a certain stock of cigars, goods, and fixtures from his son-in-law, one Offield. Some of the goods were shortly after the sale transferred to the rooms of the plaintiff, while a part of them remained for some time thereafter in the rooms of Offield, and finally all removed to a store. Offield remained with the plaintiff as an employee in and about the cigar-store. The goods and fixtures were subsequently attached by the defendant as a constable, in an action to recover a debt due from Offield. The plaintiff prevailed in the court below and the judgment was affirmed on appeal. The court, among other things, said: "It is urged that plaintiff, after the sale, employed Offield, his son-in-law, in and about the cigar-store. *While this was a suspicious circumstance, and one that should have been carefully weighed by the jury, and the court below,* yet it was by no means conclusive. It was a circumstance that might be, and was, explained."

So in the case at bar. The continued possession of the personal property by R. A. Boot, although the land upon which it was then situated was at the same time transferred to the purported vendee of the chattels, constituted what the court below well might, and no doubt did, consider a "suspicious circumstance," and sufficiently suspicious to lead it to conclude, in considering it in connection with other evidence in the case, that there was not that actual delivery and change of possession of the property requisite to make the sale valid as against creditors.

The judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 15, 1918, and the following opinion then rendered thereon:

THE COURT.—For the first time the point is made in the petition for a rehearing of this case that the personal property in dispute herein and which was seized and sold by the sheriff on an execution in satisfaction of the judgment referred to in the original opinion filed herein is exempt from execution by virtue of the provisions of section 3440 of the Civil Code. It is conceded that no claim of exemption was at any time asserted by anyone as to the property, but it is vigorously contended that, under the terms of the section named, a claim of exemption is not required to place exempt personal property within the protection of the law against seizure under legal process for the satisfaction of a judgment against the owner, and in support of this contention the recent case of *Williamson* v. *Monroe*, 174 Cal. 462, [163 Pac. 662], is cited. In that case, a part of the property levied upon by the sheriff and sold under an execution consisted of the farming utensils, implements of husbandry, and other personal property essential to the prosecution of farming. The property had been sold to the plaintiff, Williamson, by the owner, one Fonnesbeck, and at the time of said sale it was under attachment issued at the behest of a creditor of the vendor. A part of the consideration of the sale was that Williamson would cause the attachment to be released, and this he did. At no time after the levying upon the property or before the sale thereof under the execution, the purpose of which was to satisfy a judgment secured by one Merkeley against the said Fonnesbeck and one Holmes, did Williamson make a specific claim that any of the property was exempt from execution under section 3440, *supra*. It was argued in that case that none of the property was exempt from execution "unless a claim to that effect was made, and that, consequently, the proviso [referring to the exemption clause of section 3440 of the Civil Code] does not apply in this case." But the supreme court held adversely to that contention, saying: "The exemption is not declared to be conditional upon the assertion of a claim of exemption by the debtor. Its status as exempt property comes from its character and use, and not from any claim of exemption."

The court, in that case, though, further said: "It is true that the right of exemption may be waived and that, when the officer actually makes a levy upon such property, if the debtor does not claim his right within a reasonable time thereafter,

the delay may be sufficient evidence of such waiver. (*Gavitt v. Doub,* 23 Cal. 78, 80.)   But here, when the sale was made on November 14, 1910, the vendee assumed the burden of the attachment lien then existing and immediately discharged it. There was no occasion at that time to claim the exemption, and no person to whom such claim could be made.   No other execution or attachment was outstanding.   The sale then became complete, there was no waiver of the exemption, the title vested in Williamson, and the exempt property was not afterward subject to execution against Fonnesbeck.''

In the present case the contention that the property in question is exempt under the terms of the statute necessarily proceeds upon the assumption that said property, when seized by the sheriff, belonged to Robert A. Boot—that is to say, the assumption to support the theory of exemption is that the trial court's judgment that the purported sale to the plaintiff was, as against creditors, fraudulent and void, is sound, for if the sale were a valid one as against creditors, there would be no occasion for the assertion of a claim of exemption by the plaintiff, who was not affected by the judgment to satisfy which the execution was issued and the property thereupon sold.   That Robert A. Boot made no claim of exemption at any time is, as above stated, conceded; and we think that he had a reasonable time within which to do so, and that his failure to make the claim within such time amounted to a waiver of the claim.   The judgment upon which the execution was issued was given and entered on the seventh day of July, 1915.   The execution was taken out on the twenty-eighth day of July, 1915, and on that day delivered to the sheriff.   On the eleventh day of September, 1915, the sheriff levied upon and took into his possession from the possession of Robert A. Boot the property in dispute, and on the second day of October, 1915, said sheriff sold the said property as commanded by the said execution.   Thus, it will be observed, Robert A. Boot had almost a month's notice of the seizure of the property by the sheriff under the execution, and that much time within which to have asserted the claim that the property was exempt from execution.   As before stated, we think that under these circumstances he should be held to have failed to set up his claim of exemption within a reasonable time, and, therefore, waived his right to do so.

But, as stated at the beginning of this opinion, the proposition that the personal property involved herein is exempt from execution has been raised for the first time in the petition for a rehearing of this case. No such issue was presented by the pleadings, no such claim made at the trial, and no claim or point involving that proposition is presented or discussed in the original briefs filed herein by counsel for the appellant. In fact, counsel for the appellant themselves in their opening brief state the question which was submitted to and tried and decided by the trial court and submitted here as follows: "The action is an ordinary action in claim and delivery, and but one thing is involved in it, namely: The validity of a sale, on January 9, 1915, of the property involved to plaintiff by said Robert A. Boot and his wife." And the discussion in the briefs, both in the opening and closing by appellant, is confined entirely to the proposition as thus stated. There is, as in effect before declared, not the slightest intimation either in the record or the briefs that the question of the right to claim exemption of the property from execution was or would be relied upon.

It has long been the rule in this state that the appellate courts will not review or consider points which have not been made in the court below. In the very early case of *Morgan* v. *Hugg,* 5 Cal. 409, it was held: "Errors cannot be relied upon in an appellate court which are not taken advantage of and raised at the trial." This rule, which is a most salutary one, has been uniformly adhered to by the reviewing courts of this state down to the present day. (See, also, *McDonald* v. *Bear River & A. W. & M. Co.,* 13 Cal. 220; *King* v. *Meyer,* 35 Cal. 646; *Stoddard* v. *Treadwell,* 29 Cal. 281; *Williams* v. *McDonald,* 58 Cal. 527; *Anderson* v. *Black,* 70 Cal. 231, [11 Pac. 700]; *Adams* v. *Crawford,* 116 Cal. 495, [48 Pac. 488]; *Sprigg* v. *Barber,* 122 Cal. 573, [55 Pac. 419].)

We are satisfied with the conclusion announced in our former opinion upon the other branch of the discussion.

The petition for a rehearing is denied.