[Civ. No. 3129.   Fourth Dist.   May 13, 1944.]

HAYWARD LUMBER & INVESTMENT COMPANY (a Corporation), Appellant, v. JAMES FORD et al., Respondents.

LeRoy B. Lorenz for Appellant.

Kendall & Howell for Respondents.

GRIFFIN, J.—Defendants and respondents Dr. Clarence B. Vigario and his wife, Caroline F. Vigario, reside in Bakersfield and own property in Delano. That property faces

on Highway 99 with a 200-foot frontage. The north 120 feet thereof is used and leased out as a service station. On the south 80 feet was located a drive-in restaurant building which they leased to defendant James Ford, under date April 1, 1941. The lease contained a provision that no alterations were to be made "except by written consent of lessors", and that alterations and additions to said premises should, at the expiration of the lease, remain for the benefit of the lessors, unless otherwise provided. It also contained a provision that if any mechanics' or materialmen's liens be filed the lease would be subject to forfeiture. Defendant Ford took possession of the premises a few days before April 1, 1941. Shortly thereafter, he phoned Dr. Vigario that he was going to do some work of improvements on the premises. Dr. Vigario testified that about the date of the lease he ordered some gravel, paid for it, and had it delivered to the property above mentioned with the understanding with defendant Ford and the service station operator that they were to spread the gravel and fill in certain low spots on their respective premises wherever required.

On April 14, 1941, Ford wrote Dr. Vigario a letter which reads in part:

"The title from Swift and Company, etc., has not as yet come through. I understand that the delay is caused because some of the papers must go to Swift's main office in Chicago. As soon as these are completed we will start making alterations . . .

"After some thought and consideration, I believe that all of our interest would be best served by enlarging the place to twice its present capacity. This can be handled through an F. H. A. loan, through which I understand you are not obligated and it is not necessary for you to sign with me.

"I intended to see you prior to this time in regard to the matter and see what arrangements we could make and what details could be worked out. . . . It will also give us room for the kitchen and sufficient room for customers to walk in and out.

"We have *spred* gravel around the place and the service station man has gone to some pains to scatter it.

"I know that we could settle a number of things if we could only talk together so if you are in shape and so desire I will come down to suit your convenience."

Upon receipt of the letter Dr. Vigario, understanding that Ford had commenced work upon the property, consulted his attorney and was advised to post a notice of nonresponsibility if work had actually been commenced. A notice of nonresponsibility was thereupon prepared and executed. It recited the names of the owners of the premises; that the property had been leased by defendant Ford on April 1, 1941; that he was entitled to enter upon and occupy the property for the purpose of operating a drive-in restaurant; that the owners "have been advised" and therefore allege that "work of construction of alterations and remodeling and enlarging the drive-in restaurant building upon the premises is being carried on"; that the owners first obtained knowledge of said work of construction and performance of labor on the premises on the 16th day of April, 1941; "that ten days have not elapsed since they first obtained knowledge of such construction and labor . . ."; that the owners will not be responsible for the construction of or materials used, in the alterations, remodeling or enlarging of any building or structure of any kind or character upon said premises.

On April 19, 1941, Dr. Vigario visited the property. He testified that he then found evidence that Ford had commenced work upon it; that he then posted the notice and recorded a copy on April 21, 1941; that in addition thereto he notified one of the lumber companies in Delano, where he thought the defendant Ford was going to trade, of the posting of the notice.

The first point here involved is plaintiff's contention that the evidence does not support the trial court's finding that the work of altering and improving the leased premises had commenced prior to the posting of the nonresponsibility notice; that under section 1192 of the Code of Civil Procedure the notice was prematurely posted. We will therefore review the evidence on this subject.

Dr. Vigario testified in reference to work that had been started that when he posted the notice he saw that Ford "had had some of the things moved out of" a little shanty in the back, ". . . quite a bit of that stuff had been piled up in a pile . . . like shelving and trays and equipment that they used for that kind of business;" that in the center of the room "I believe, if I am not mistaken . . . a counter . . . was moved to allow a little more room;" "there was other things

progressing about the place;" there was "something in the back and he had started on something, I don't just remember;" that "there is a partition between the kitchen and then the back counter and the front counter where people sit down to eat and the equipment on that, as I remember, had been dismantled;" that he thought that Ford was "up there looking around the place, getting gravel spread around, because they told me that that was going to be done and was being done, so when I went up there I looked around for the little details of that kind. I didn't make particular note of it. I did note he had started messing around inside;" that he presumed the gravel was spread around the place; that a "lot of holes there" had been filled in; that the service station took care of their own, they did their own work, and this fellow did his own work, Ford and some other workers;" that he paid for the gravel with the understanding that "they were to do the handling themselves."

The manager for plaintiff corporation testified that plaintiff sold defendant Ford materials on a running account; that on June 5, 1941, he sold the first material for the particular improvement here involved; that he was "quite certain" all material delivered there went on the job; that plaintiff's place of business is about one-half block from the improvement; that it sold Ford the material listed on the invoices in evidence; that the balance remaining due on Ford's account was $519.25, less a credit of $59 paid by Ford on April 1, 1942; that Ford operated another cafe and also a grocery store in Delano; that during the time here in question plaintiff was selling materials to Ford, in a small quantity, for the grocery store job; that he observed the Vigario property often; that he didn't remember if any work had been going on there about April 14th; that he did not examine the property on June 5, 1941, the date of the first delivery, but did examine it from time to time until the alteration work was completed.

One workman testified that he was employed by Ford; that he went to work for him on May 17, 1941; that on that date, no construction work had been done in the place; that there was no building material on the lot; that he recognized some of the items on the invoices that he put into the building; that he quit that job on May 23rd and later returned on June 11th; that he worked for Ford on other jobs.

Other witnesses corroborated this testimony except one wit-

ness noticed that Mr. Ford was on the premises about April 1st; that Ford had scattered gravel around and "there had been some work done there."

Defendant Ford failed to pay for the materials sold and delivered to him. Plaintiff filed a materialman's lien against the "premises" which was followed by this action to foreclose the lien. Ford defaulted and did not appear at the trial. He had, previous to the time of the purchases here made, gone through bankruptcy. This fact was known to plaintiff, who trusted him because he had paid them in full before he filed in the bankruptcy court. Plaintiff took a local paper which contained the notice of nonresponsibility which notice was filed in the recorder's office. The nonresponsibility notice was posted in a conspicuous place on the door which entered the building on which the alterations were being performed and it remained there while plaintiff was furnishing the materials.

The spreading of the gravel by defendant Ford could be considered a part of the improvements of the premises and coincided with the alterations and preparation of the premises by the defendant Ford for his uses. The fact that the gravel was purchased by Dr. Vigario, for both the service station premises and the drive-in restaurant premises, which gravel was to be spread by Ford and the service station lessee at their expense, did not necessarily make Dr. Vigario a participating owner, as contended by plaintiff, citing *Western Lumber & Mill Co.* v. *Merchants' Amusement Co.*, 13 Cal. App. 4 [108 P. 891], which would deprive him of the right to file a nonresponsibility notice for materials furnished by plaintiff and to claim the benefits of section 1192 of the Code of Civil Procedure. The evidence as to the work that had been actually started at the time of the posting of the notice was not entirely definite and the testimony of Dr. Vigario in reference thereto was somewhat uncertain. The trial court, however, believed the testimony as related. On this issue it found that the work on the alteration and improvement of the building had actually been commenced on and prior to the posting of the notice of nonresponsibility, and rendered judgment against Ford for $460.25 and denied plaintiff a lien. The appeal is from that portion of the judgment denying the lien.

The object of a notice of nonresponsibility, as stated

in *English* v. *Olympic Auditorium, Inc.,* 217 Cal. 631, 637 [20 P.2d 946, 87 A.L.R. 1281], is "to bring home to those who are expending labor or materials upon a building, the fact that the owner of the land will not be responsible for such labor or materials." ▮▮▮ Having in mind the general rule that all intendments are in favor of the judgment and that this court must accept as true all evidence tending to establish the correctness of the findings as made, we are satisfied that there is sufficient evidence to uphold the conclusions of the trial court. (*Feckenscher* v. *Gamble,* 12 Cal. 2d 482, 492 [85 P.2d 885] ; *Hickman* v. *Freiermuth,* 21 Cal. App. 629 [132 P. 772] ; *Simons Brick Co.* v. *Hetzel,* 72 Cal. App. 1 [236 P. 357] ; *English* v. *Olympic Auditorium, Inc., supra; Harmon Lumber Co.* v. *Brown,* 165 Cal. 193 [131 P. 368] ; *Hayward Lumber & Investment Co.* v. *Orondo Mines,* 34 Cal.App.2d 697 [94 P.2d 380].)

▮▮▮ It is next contended and argued for the first time on appeal that plaintiff was entitled to a lien upon the interest of the lessee and upon the building in any event. In support of this contention it cites *English* v. *Olympic Auditorium, Inc., supra.* This point was not urged nor argued before the trial court. Plaintiff's first amended complaint alleges that the Vigarios were the owners of the land described (the south 200 feet of block G) ; that Ford did remodeling of a restaurant building upon the "premises described"; that the whole of the parcel of real estate described is necessary for the convenient use and occupation of the said improvements; that defendants claim some interest in "said premises" inconsistent with the lien claim of plaintiff and prayed for a "personal judgment" against Ford and that said judgment be declared a lien upon "said property hereinabove described . . . together with its appurtenances . . . and/or in any part thereof."

The claim of materialman's lien filed by plaintiff sought a lien upon the "premises hereinafter described, for building materials furnished to James Ford for use in, and which were used in the alteration, addition to, or repair of a certain building or improvement upon the parcel of land, situated in the county of Kern . . . described as follows: the south 200 feet of block G" alleging that Clarence B. Vigario is the owner and the reputed owner of said premises.

It is quite apparent that the plaintiff was originally seeking a lien against Vigarios' entire 200-foot strip of land on

which was located two separate and distinct improvements, namely, a service station and a restaurant. The form of lien substantiates this conclusion and does not claim a lien upon the restaurant building separate from the service station and separate from the land upon which it was located.

The case was tried upon the theory that the nonresponsibility notice was prematurely filed and that therefore there was a lien upon the land. Plaintiff's then attorney made no contention during the trial that plaintiff was or should be entitled to a lien against the restaurant building notwithstanding the fact that it may be found that the land itself was protected by the nonresponsibility notice. In fact, it clearly appears that all parties at the trial were agreed that if it were found that the nonresponsibility notice was filed in proper time plaintiff could obtain no lien against the Vigarios' property. We need but quote the statement of the trial judge directed to plaintiff's then attorney, at the conclusion of the case: ''By the court: Apparently the issue here is as to whether notice of nonresponsibility was effective or not by reason, I assume the plaintiff's contention is, it was premature. Mr. Lyons: That's our contention, Your Honor. We refer you to *Hayward Lbr. & Inv. Co.* v. *Ross,* 32 Cal. App.2d 455 [90 P.2d 135]. By the Court: All right, we will submit it then.'' The case cited did not bear upon any question of lien upon improvements but only on the question of the posting and filing of a notice of nonresponsibility.

A different attorney was thereafter employed to perfect the appeal from a portion of the judgment rendered in this case. The point is now presented for the first time on this appeal that the court erred in failing to declare a lien upon the restaurant building and the interest of the lessee in any event.

It is a well established rule of law, with certain exceptions, that an appellate court will consider only such points or objections as were raised in the trial court, and this rule precludes a party from asserting on appeal, claims to relief not asserted or asked for in the court below. (*Boot* v. *Boyd,* 37 Cal.App. 545, 555 [174 P. 352]; *Rimmer* v. *Hotchkiss,* 162 Cal. 385 [123 P. 256]; *Buck* v. *Canty,* 162 Cal. 226 [121 P. 924]; 2 Cal.Jur. 234, § 67.) In this connection we should consider the pleadings and nature of the claim filed.

A claim of lien should be of such a character as sufficiently to identify the property or improvement upon which

it is claimed the lien should attach. (*Bishop* v. *Hayward Lumber & Investment Co.,* 19 Cal.App.2d 234 [65 P.2d 125]; CodeCiv.Proc. § 1187; *Santa Monica L. & M. Co.* v. *Hege,* 119 Cal. 376 [51 P. 555].) This has been said to be one of the most important requirements of the statute. (*Fernandez* v. *Burleson,* 110 Cal. 164 [42 P. 566, 52 Am.St.Rep. 75].) Although it has been held that in a claim of lien an imperfect attempt to describe the land sought to be charged may be aided and rendered sufficient by other allegations therein, the rule is that it must contain a statement of the facts which the statute prescribes for the creation of a lien and must also contain a description of the property to be charged with the lien. This statute is remedial, of course, and is to be liberally construed. (*Union Lumber Co.* v. *Simon,* 150 Cal. 751, 757 [89 P. 1077, 1081].) ▮ In view of the nature of the claim filed, the pleadings, the evidence, and counsel's statement in reply to the question propounded by the trial court, it might be well said that plaintiff was seeking to hold the *land* of the Vigarios for the claimed lien. The case was tried in the trial court on that theory. No request was made of that court to apportion any part of the property or to designate any particular improvement upon which a lien could be foreclosed. ▮ It is well settled that the theory upon which a case is tried in the court below must be adhered to on appeal. To permit a party who has tried his case wholly or in part upon a certain theory, which theory was acted upon by the trial court, to change his position and adopt a different theory on appeal would not only be unfair to the trial court but manifestly would be unjust to the opposing litigant. (*Merrill* v. *Kohlberg,* 29 Cal.App. 382, 386 [155 P. 824].)

Plaintiff took judgment by default against defendant Ford for the amount of the indebtedness. No additional relief was sought against him in the form of a lien upon any interest he might have in the leasehold property. The judgment against Ford has become final.

Since the evidence supports the finding that the nonresponsibility notice was filed in proper time and that no lien attached to the property, plaintiff's claim that the trial court failed to find that the materials furnished *were actually used in the construction work,* becomes immaterial. Any errors in making or failing to make other findings complained of

were not prejudicial to plaintiff. (*Buck* v. *Canty, supra.*) Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 10, 1944. Curtis, J., voted for a hearing.