[Civ. No. 951. Fourth Appellate District.—September 3, 1932.]

MARGARET CALIHAN, Respondent, v. YELLOW CAB COMPANY OF SAN DIEGO (a Corporation), Appellant.

Hamilton, Lindley & Higgins and Arthur F. H. Wright for Appellant.

Adam Thompson and Renwick Thompson for Respondent.

HARDEN, J., *pro tem.*—The plaintiff, Margaret Calihan, Russell K. Dougherty and two other persons were passengers in a taxicab operated for hire in San Diego by defendant, Yellow Cab Company of San Diego, a corporation, on the sixth day of October, 1930. On that day, while said taxicab was being driven rapidly over a depression commonly known as a "double dip", placed at a street intersection to carry off rain-water, plaintiff and said Russell K. Dougherty were thrown from their seats with such force that their heads struck against the top of the taxicab, resulting in personal injuries to both of them. Plaintiff brought suit against defendant and prayed for general damages in the sum of $7,500 and for special damages in the sum of $550. Trial was before the court and a jury, and resulted in a verdict in plaintiff's favor for the full amount of her demand, $8,050. Judgment was entered accordingly. Motion for new trial

was denied. One of the grounds of the motion was that the verdict was excessive. Defendant has appealed from said judgment.

■ The sole point raised on the appeal is that the judgment was excessive.

Stated substantially in the language of the witnesses, the record would sustain the following findings:

Plaintiff had received personal injuries in an accident which occurred in August, 1928. At that time she sustained a broken leg and injuries to her back and ribs. From said injuries she had recovered, so that on October 6, 1930, she was vigorous and able to follow the profession of nursing; she was then possessed of great endurance; was of a jovial disposition; was plump and rosy, and in good health. At the time of the accident involved herein she was twenty-nine years of age, and earned about $100 per month from following the profession of nurse. In said accident she sustained a bruise to the top of her head, caused by a severe blow. Thereafter she was found to be in extreme agony from injury to her neck, with pain in her head and in the cervical and dorsal regions of her back. Several vertebrae were rotated, and apparently some of the ligaments and muscle fibers were torn. The result was the turning of her head to one side and the raising of her shoulders. She was confined to her bed nine-tenths of the time from October 6, 1930, to December, 1930. Up to the time of the trial, which occurred over eleven months after the accident, she was not able to stand the strain of continued work at her profession. During that period she had cried frequently without reason; she seemed weak and trembling; had lost from ten to fifteen pounds in weight; and there was a marked change in her appearance and disposition. At the trial she seemed haggard and worn and appeared to be ten or fifteen years older than before the accident; she looked like a different person; was melancholy, pessimistic and nervous; her neck and head were drawn over to one side and her shoulders not in normal position; there was a change in her gait, and she leaned forward when sitting. It must be stated, however, that it was admitted at the trial that plaintiff had sustained no permanent injuries.

It was established that plaintiff's special damages, on account of expense incurred for the services of physicians and

nurses, amounted to $550, and that up to the time of trial she had been without earnings as a result of her injuries for over eleven months, making an additional loss of about $1100. After deducting said items from the amount of the general verdict, it appears that the net amount awarded for personal injuries, pain and suffering, and probable loss of earnings in the future, was $6,400. That is the basis for the contention of appellant that the award was excessive.

In any consideration of the question raised here, appellant has the distinct burden of carrying its point. The verdict was subjected to review by the trial court upon proceedings for new trial, and comes here bearing that court's approval.

Particular emphasis is placed by appellant on the fact that, owing to the financial depression from which the country is suffering at the present time, the value of the dollar has increased to such an extent as to make the award excessive. It is contended that the court will take judicial notice of conditions; that in periods of great prosperity, when money was cheap, courts have considered that fact as a justification for affirming large awards; that conversely, now that money is dear, when much in goods and labor is demanded in return for the dollar, the same rule ought to apply.

Changing conditions should be noted by the courts. While it may be proper for defendant to point to the increased purchasing power of plaintiff's dollar, defendant's actual complaint is the scarcity of money. Our judicial knowledge having been invoked, we note signs of the country's gradual emergence from the depths of the depression; we may expect a return to normal conditions. No exact measure of detriment suffered as a result of personal injuries has ever been applied, or is possible. Necessarily, values are different. To plaintiff, her injuries were serious; to defendant, they appeared to be trivial. Aside from special damages awarded and an allowance for loss of earnings, the jury and trial court considered that plaintiff's damages amounted to $6,400, and did so in the knowledge common to courts and jurors alike of present financial conditions. Undoubtedly the standards of court and jury are ordinarily more nearly exact than those of either party to an action. An appellate court may properly rely with confidence on the good sense and sound judgment of those to whom the trial is committed. It is

therefore the rule that, unless the award is so grossly disproportionate to any fair limit of compensation warranted by the facts as to shock the sense of justice and indicate that it was based on passion and prejudice rather than sober judgment, the reviewing court will not interfere to impose its judgment for that of the jury and trial court.

Having considered the entire record carefully, we cannot say that the verdict has the appearance of being the result of prejudice or passion. It is not so far at variance from this court's opinion of what was fair compensation as to warrant our interference.

The conditions under which we may interpose our judgment against that of the jury are so well understood that we cite only two authorities in support of our decisions: *Smith* v. *Royer*, 181 Cal. 165 [183 Pac. 660]; *Zibbell* v. *Southern Pac. Co.*, 160 Cal. 237 [116 Pac. 513].

The judgment is affirmed.

Marks, Acting P. J., and Jennings, J., concurred.