[S. F. No. 15719. In Bank.—July 29, 1937.]

THE ANGLO CALIFORNIA NATIONAL BANK OF SAN FRANCISCO (a National Banking Corporation), Petitioner, v. FRANCES S. LELAND, as Tax Collector, etc., et al., Respondents.

Young, Hudson & Rabinowitz for Petitioner.

M. R. Van Wormer, District Attorney, for Respondents.

EDMONDS, J.—This is an original application for a writ of mandate to compel the respondent officials of San Luis Obispo County to accept the tender of certain sums of money by way of payment upon delinquent taxes and assessments

on the real property owned by the petitioner. The sufficiency of the tender made by the petitioner is conceded in the event that petitioner was entitled to avail itself of the provisions of section 3817c4 of the Political Code, which was adopted by the legislature at the special session in 1936. This section was enacted to grant relief to property owners by permitting them to pay delinquent taxes and assessments in instalments and thereby to extend the period of redemption. It applies to ''all taxes and assessments charged on the tax roll'' in ''all cases where real estate has been sold to the state on or before July 6, 1936, . . . and the state has not disposed of the same. . . . ''

The land in controversy was acquired by the petitioner in 1935. It was within what is known as Assessment District No. 16. In 1930, pursuant to the provisions of the County Improvement Act of 1921 (Stats. 1921, chap. 872; Deering's Gen. Laws, 1931 ed., Act 3289), which adopts and incorporates the Improvement Bond Act of 1915 (Stats. 1915, p. 1441; Deering's Gen. Laws, 1931 ed., Act 8209) bonds were issued representing unpaid assessments for improvement work done within the district. Thereafter, the portion of the assessments which became due upon the property in the fiscal year 1932–1933 became delinquent and on August 30, 1933, the property was sold by operation of law and the declaration of the tax collector to the state of California. The property was not redeemed from this sale and in 1934 the board of supervisors of San Luis Obispo County levied a special tax of ten cents on every $100 of assessed valuation of property within the county and placed the proceeds in the redemption fund account for the payment of delinquencies in Assessment District No. 16. On January 2, 1936, the county tax collector of San Luis Obispo County conveyed the property to the state of California by deed. No further transfer has been made by operation of law or otherwise. The tender of the petitioner was made in June, 1936, to the proper officers and in the correct amounts as of that date necessary to redeem the property, if that right then existed.

The sale to the state was made under the provisions of the Improvement Bond Act, *supra*, which provides that upon default in the payment by the property owners of any instalment of an assessment levied to pay the cost of improvements, the land securing such assessment shall be sold in the manner provided for a sale for the nonpayment of general taxes and

be subject to redemption within one year from the date of sale. By another provision of the act, construing its provisions as required by section 9 of the County Improvement Act, *supra,* the state "shall hold the title acquired at such sale upon behalf of the [county] but shall account to the [county] for any moneys received upon redemption or from the sale of such property, the [county] for the purposes of this act being deemed the real purchaser". (Sec. 12.) The respondent officials contend that under these provisions the county became the owner of the property sought to be redeemed one year after the sale of August 30, 1933, and that the petitioner is not entitled to redeem under section 3817c4 of the Political Code or any other law. They claim that as the county has been forced to levy a general tax to pay instalments on improvement bonds and has invested the money of the taxpayers in the property of the delinquent property owner it has acquired a vested interest in the property and stands in a different position than where a sale has been made for nonpayment of general taxes. The title thus acquired, say respondents, cannot be interfered with by the legislature in extending the time for redemption.

However, there is no difference in principle between the sale of property for failure to pay general taxes which have been levied against it and one made because of delinquency in the payment of assessments made for public improvements. The county has the right to make such improvements and to pay the whole cost from funds acquired by the levy of *ad valorem* taxes. Where such taxes are not paid, the property of the delinquent owner is sold to the state for the benefit of the county and in aid of the collection of its revenues. If bonds are issued representing the cost of improvements and the property owner does not pay an instalment of the assessment levied against his property to provide funds to redeem the bonds, a sale is made to the state for the purpose of enabling the county to meet its obligations. In each case the purpose is to take a tax title in aid of the collection of necessary revenues for public purposes.

In considering the status of the county it must be remembered that the Bond Improvement Act, *supra,* as written, applies only to cities but that it has been adopted by reference in the County Improvement Act, *supra.* The only provision of the former act which requires a county to be the purchaser at a sale for delinquency in payment of an assess-

ment is the one which applies to a city "where the municipal property tax is collected by county or city and county officials and sales for nonpayment of such taxes are made to the state". In providing for a sale to the state in such a case it was obviously necessary to provide that notwithstanding the state shall be the purchaser, it shall hold title for the benefit of the city. In the absence of such a provision the right to redemption money or the proceeds of a sale after expiration of the right of redemption would not be clear. To make certain that in such a case the city and not the county or the state should receive any benefits from the tax sale, the act requires the state to "account to the city for any money received upon redemption or from the sale of such property, the city for the purposes of this act being deemed the real purchaser". But where bonds have been issued by a county and property against which assessments were levied has been sold for failure to pay an instalment of such assessment, the designation of the county as the "real purchaser" means only that it is entitled to receive all amounts paid for the redemption or purchase of the property notwithstanding other provisions of law concerning property sold to the state. It does not make the county a purchaser in its proprietary capacity.

The fact that the county has collected general taxes which have been paid into the redemption fund set up to retire the bonds does not change the nature of the tax sale. The collection of such amounts and the payment of them to the bondholders is "a loan or advancement to facilitate and make effectual the proceedings under the act and which the city later may recover". (*City of Pasadena* v. *McAllaster*, 204 Cal. 267, 277 [267 Pac. 873].) It is a revolving fund which a city or county is required to collect "to assist in the purchase of the lands sold at delinquent tax sales" (*Hammond* v. *City of Burbank*, 6 Cal. (2d) 646, 656 [59 Pac. (2d) 495]), "reimbursement being realized upon redemption or resale of the property". (*City of Los Angeles* v. *Aldrich*, 8 Cal. (2d) 541 [66 Pac. (2d) 647].) Neither the levy of general taxes as required by the act to meet delinquencies in the payment of assessments or the transfer of the proceeds of such levy to the bond redemption fund gives the county the status of a purchaser for value which terminates the right of the owner to redeem.

The settled policy of the law is to allow a delinquent owner to redeem his property (*Buck* v. *Canty*, 162 Cal. 226

[121 Pac. 924]), and to make his burdens as light as possible. (*Russ & Sons Co.* v. *Crichton,* 117 Cal. 695 [49 Pac. 1043].) It has been repeatedly held that the return to the tax rolls of property which has been sold for taxes in order that it may again support general governmental functions is in the public interest. (*La Mesa etc. Irr. Dist.* v. *Hornbeck,* 216 Cal. 730 [17 Pac. (2d) 143]; *County of Los Angeles* v. *Jones,* 6 Cal. (2d) 695 [59 Pac. (2d) 489]; *City of Los Angeles* v. *Aldrich,* 8 Cal. (2d) 541 [66 Pac. (2d) 647].) ■ The necessity that property be available for the support by taxation of the necessary functions of government, as well as a recognition of the rights of the taxpayer to his property when the tax demands upon it are met place tax sales to the state or one of its subdivisions on a different basis than those made to individuals. ■ As to the latter it is generally held that the law in force at the time of sale for nonpayment of taxes governs the right of redemption and that such period may not be diminished or extended by subsequent legislation to the prejudice of either the land owner or the purchaser at the tax sale. (*County of Los Angeles* v. *Rockhold,* 3 Cal. (2d) 192 [44 Pac. (2d) 340, 100 A. L. R. 149].) But this general rule may be said to have an exception where the state or one of its subdivisions is the purchaser. (*Board of Commrs.* v. *Lucas,* 93 U. S. 108 [23 L. Ed. 822]; *Walker* v. *Ferguson,* 176 Ark. 625 [3 S. W. (2d) 694]; *McIver Abstract Co.* v. *Slaton,* 178 Ark. 632 [11 S. W. (2d) 447]; *Grieb* v. *National Bank,* 252 Ky. 753 [68 S. W. (2d) 21]; *State* v. *Butts,* 111 Fla. 630 [149 So. 746]; *Pace* v. *Wight,* 25 N. M. 276 [181 Pac. 430]; *Warner* v. *Pile,* 105 Kan. 724 [185 Pac. 1041, 1 A. L. R. 143].) The distinction is clearly pointed out in *Walker* v. *Ferguson, supra,* where the court said at page 695, ''Where lands are sold at a tax sale and are struck off to a private purchaser, the sale for the delinquent taxes constitutes a contract between the purchaser and the state, or the instrumentality of the state, the obligation of which cannot be impaired by subsequent legislation extending the period of the right to redeem. Hence this court has held that the right to redeem in such cases from a tax sale is governed by the statute in existence at the time the sale is made, and no subsequent statute extending the period of time for the right to redeem is constitutional.

"The title acquired by the state, or an instrumentality thereof, at a tax sale is not the same as that vesting in a private purchaser, since the object of the purchase is not the acquisition of the property, but rather the collection of the taxes. (37 Cyc. 1355, and *Board of Commrs.* v. *Lucas, Treasurer,* 93 U. S. 108 [23 L. Ed. 822].) Hence the rule that a statute extending the time to redeem from a tax sale is not constitutionally applicable to sales made before its enactment is subject to an exception where the state or one of its instrumental subdivisions was the purchaser."

Petitioner was entitled to avail itself of the provisions of section 3817c4 of the Political Code and it was the duty of respondents to accept the tender made by petitioner. It is ordered that a peremptory writ of mandate issue directing respondents to accept payment for delinquent taxes and assessments upon the property described in the petition on file herein in the manner prescribed in section 3817c4 of the Political Code.

Shenk, J., Curtis, J., and Seawell, J., concurred.