[L. A. No. 18944. In Bank. Mar. 30, 1945.]

HENRY A. GARTNER et al., Appellants, v. V. L. ROTH, as Auditor, etc. et al., Respondents.

C. E. Crowley for Appellants.

Robert W. Kenny, Attorney General, John L. Nourse and Daniel N. Stevens, Deputies Attorney General, John P. Knauf,

County Counsel, and R. J. Farrell, Deputy County Counsel, for Respondents.

SPENCE, J.—In this proceeding plaintiffs sought, and were denied, mandamus to compel the defendant auditor and the defendant treasurer of the county of San Bernardino to issue an estimate of, and permit, redemption of certain real property upon payment of tax delinquencies and penalties as computed by said county officials.

In 1941 the Legislature provided by section 3511.3 of the Revenue and Taxation Code that "On and after June 1, 1942, and prior to January 1, 1947, on execution of the deed to the State, the right of redemption is terminated as to all property . . . [with an exception not here material]." (Stats. 1941, ch. 290, p. 1425.) Then in 1943 an act was passed which read, in part, as follows: "Sec. 2. The operation of Section[s] 3511.3 [and ten other sections] of the Revenue and Taxation Code shall be postponed and suspended until June 1, 1945." (Stats. 1943, ch. 932, p. 2804.) The propriety of plaintiffs' claim for relief depends upon the import of this later enactment, which became effective on August 4, 1943.

From the agreed statement on file herein the following facts appear: Certain real property in the city of Upland, county of San Bernardino, was assessed to J. Julius Gartner for the year 1936, but taxes for that year were not paid. Said Gartner died in 1937, and the property was distributed to plaintiff Henry A. Gartner, who sold said property under contract to plaintiffs James and Allie Harrison, who have been in possession since 1937. On August 3, 1942, the property was deeded to the state for nonpayment of the 1936 taxes. Plaintiffs first discovered that said taxes had not been paid in November, 1942, which was after the deed to the state had been recorded. They immediately made application to defendants for an "estimate of redemption" and offered to pay said taxes with all penalties and interest. Defendants refused to proceed, however, upon the ground that the provisions of sections 3476 and 3511.3 et seq. of the Revenue and Taxation Code prevented them from permitting said property to be redeemed. Plaintiffs have ever since stood ready and have repeatedly offered to pay all delinquent taxes with all penalties and interest. Since November 15, 1942, they have paid rental on the property to the state, and the rent which has been paid

nearly equals the amount of taxes, interest and penalties that would be due in the event of redemption.

On October 8, 1943, plaintiffs filed a petition for a writ of mandate and secured the issuance of an alternative writ. At the hearing of said matter it was stipulated that the above facts were admitted by all parties; that there was no question of fact to be determined; and that the only issue to be decided was the question as to whether or not plaintiffs had the right to redeem said property. Thereupon findings were made to the effect that the 1943 enactment, *supra*, had no retroactive application so as to authorize a redemption of property deeded to the state for taxes between June 1, 1942, and August 4, 1943, and that during that period section 3511.3 of the Revenue and Taxation Code was in full force and effect. An order was entered accordingly quashing the alternative writ and denying the petition for a peremptory writ of mandate. Plaintiffs have appealed from that order.

Appellants contend that it was the express and implied intent and purpose of the Legislature, in adopting the 1943 act, *supra*, to raise the bar to redemption theretofore imposed by section 3511.3 of the Revenue and Taxation Code, *supra*, and to permit the redemption of *all* property deeded to the state for taxes, *and not sold by the state*, at any time up to June 1, 1945. On the other hand, respondents argue that said section 3511.3 instantly and finally terminated any right of redemption with respect to the property here in question when it was deeded to the state on August 3, 1942; that the 1943 act contains no provision for its retroactive application; that certain constitutional objections arise unless the later enactment is construed to operate "prospectively only," covering the limited period of August 4, 1943, to June 1, 1945; and that since chapter 362, also adopted in 1943 (Stats. 1943, pp. 1598-1599) sets forth that its purpose is to avoid any conflict between the laws of this state and the federal Soldiers' and Sailors' Relief Act of 1940, as amended [54 Stats. 1178; 50 U.S.C.A.App. § 501 et seq.], it must be assumed that the sole purpose of adopting the 1943 act here in question (Stats. 1943, ch. 932, p. 2804) was the same. Consideration of the language of the 1943 act, cited by appellants as the basis for their claim to relief, sustains appellants' position as consistent with the established policy of this state "to give the delinquent taxpayer every reasonable opportunity

to redeem his property.'' (*Lachmund* v. *Johnson,* 47 Cal. App.2d 377, 380 [117 P.2d 920].)

In the act adopting section 3511.3 (Stats. 1941, ch. 290, p. 1423) the Legislature declared a policy of using the revenues derived from tax-deeded property ''for the primary purpose of restoring tax-deeded property to the rolls'' (Stats. 1941, p. 1429), and to expedite this object it was provided that the act should ''take effect immediately.'' In *Mercury Herald Co.* v. *Moore,* 22 Cal.2d 269, 272 [138 P.2d 673, 147 A.L.R. 1111] this court observed that other provisions for the termination of the right of redemption, adopted in 1941, were ''an integral part of a plan to classify and rehabilitate tax-deeded property'' and were designed ''to expedite the restoration of real property to the tax rolls.'' ■ With the change in economic conditions and the general improved financial status of inhabitants of this state incident to the increased industrial activity in connection with the maintenance of the war effort following the United States' entry into war in December, 1941—facts of which this court may properly take notice (*City and County of San Francisco* v. *Collins,* 216 Cal. 187 [13 P.2d 912]; *Calihan* v. *Yellow Cab Co.,* 125 Cal.App. 649 [13 P.2d 931]; *Weaver* v. *Grunbaum,* 31 Cal.App. 2d 42 [87 P.2d 406]—it would appear that the 1943 act here in question, which raised the 1941 statutory bar (§ 3511.3) to the delinquent taxpayer's exercise of the right of redemption so as to make possible and more probable an early restoration to the assessment rolls of large numbers of parcels of tax-deeded property, was adopted as a progressive step in furtherance of the state's declared tax rehabilitation program. ■ And the plain language of the 1943 act would indicate that the redemption bar was raised not only as to property tax-deeded to the state between August 4, 1943, and June 1, 1945, but also as to property so deeded between June 1, 1942, and August 4, 1943 (the effective date of the 1943 act) and retained by the state. Thus, the 1943 act provides that the *''operation of''* section 3511.3 and other sections ''shall be *postponed and suspended* until June 1, 1945.'' According to Webster's New International Dictionary, second edition, the word ''postpone'' carries with it the idea of deferring the doing of something or the taking effect of something until a future or later time, while the word ''suspend'' conveys the *additional* thought of causing to cease

for a time *an effect which has already been operative.* Ac-, cordingly, the Legislature evidenced its intent that the *entire operation* of section 3511.3 should be "postponed and sus- pended"—its past operation as well as its future operation— and that the right of redemption should be available "until June 1, 1945" as to *all* tax-deeded property retained by the state.

As above noted, section 3511.3 provided that within the dates designated "on execution of the deed to the State, the right of redemption is terminated as to *all* property. . . ." In interpreting the 1943 act as applying to *all tax title prop- erty* held by the state on the effective date of the act, Au- gust 4, 1943, as well as to any property deeded later to the state but before June 1, 1945, the 1943 act is given an appli- cation commensurate in scope with that of the 1941 statute, the effect of which is both "postponed and suspended." The 1943 act contains no reservation in its general language which would give it only prospective operation, and if it had been so intended, it would have been the simple procedure for the Legislature to have so provided by express recital. Within the principle of *Mercury Herald Co.* v. *Moore, supra,* the Legislature had the power to make retroactive changes in the *method of disposition of property* acquired by it because of the nonpayment of taxes and to extend to the delinquent owner an opportunity to redeem his property before sale by the state. Analogous in concept is the observation with re- gard to the right of redemption from a tax sale as stated in *Anglo California National Bank* v. *Leland,* 9 Cal.2d 347, 353 [70 P.2d 937], quoting from *Walker* v. *Ferguson,* 176 Ark. 625 [3 S.W.2d 694]: "The title acquired by the state, or an instrumentality thereof, at a tax sale is not the same as that vesting in a private purchaser, since the object of the purchase is not the acquisition of the property, but rather the collection of the taxes. (Citing authorities.) Hence the rule that a statute extending the time to redeem from a tax sale is not constitutionally applicable to sales made before its enactment is subject to an exception where the state or one of its instru- mental subdivisions was the purchaser." Moreover, it would be unreasonable to assume that the Legislature, in granting in 1943 general relief to taxpayers whose lands had been deeded to the state and had not yet been sold by the state, intended a different treatment for those taxpayers whose

lands had been deeded between June 1, 1942, and August 4, 1943—the period when section 3511.3 was in effect—so that particular group should be denied the rights and privileges of redemption enjoyed by all the others whose property was tax-deeded to the state either prior or subsequent to that period. In according retroactive force to the 1943 act, such discrimination is avoided, and the phraseology of the act is given its full breadth of meaning in achievement of the manifest legislative design. In line with the cardinal rule of statutory construction requiring an interpretation of a statute which will give effect to the legislative intent as implied in the terms of the statute evidencing its real object and purpose (23 Cal.Jur. § 107, p. 725), the Legislature's choice of language in the 1943 act compels the conclusion that it was thereby intended to suspend the *entire* operation and effect of section 3511.3, so that it would be ineffective for any purpose until June 1, 1945.

Nor is there any merit in the argument of respondents that the 1943 act, if construed to have retroactive force, might be unconstitutional because the right of the state to the proceeds of taxation, when once vested, cannot be impaired by subsequent legislation, since to do so would constitute the making of a gift of the property of the state contrary to section 31, article IV of the California Constitution. (*Estate of Stanford*, 126 Cal. 112 [54 P. 259, 58 P. 462, 45 L.R.A. 788]; *Trippet* v. *State*, 149 Cal. 521 [86 P. 1084, 8 L.R.A.N.S. 1210]; *Estate of Potter*, 188 Cal. 55 [204 P. 826]; *Estate of Lander*, 6 Cal.App. 744 [93 P. 202].) The cases relied upon involved the state's right to the inheritance tax vesting at the date of the taxable transfer and the constitutional objection to the Legislature's reduction of the rate of taxation thereon by subsequent enactments. But the situation here rests on a wholly distinguishable concept where the state, as part of the tax rehabilitation program affecting real property assessments, would not be giving away property but would be simply restoring a right which all delinquent taxpayers originally possessed and which had been lost to a part of them for a time. All that the state is justly entitled to have is its tax money, and the 1943 act merely effected a change in the method of disposition of tax-deeded property whereby certain former owners were again given the opportunity, before an actual sale by the state, to regain their property by re-

demption without impairing the right of the state to proceed to sell in case the owners should fail to avail themselves of that opportunity. ■ It is within the power of the Legislature to regulate the procedure to be followed in securing to the state its tax revenues and in expediting the return to the tax rolls of property which has been sold to the state for taxes in order that such property may again support general governmental functions in the public interest. (*Buck* v. *Canty,* 162 Cal. 226 [121 P. 924].) ■ As so analyzed, the retroactive application of the 1943 act does not impair the state's vested right to the payment of delinquent taxes so as to violate the constitutional prohibition, but involves only a change in the *method of collecting* the state's tax claims. The Legislature has not manifested an intention that the state should go into the real estate business to acquire property from delinquent taxpayers during depression years for a small fraction of its value and to insist on a forfeiture of such property when, under improved economic conditions, the former owners are able and willing to pay the full amount of their taxes and penalties. Rather it is the settled policy of the state to afford delinquent taxpayers ample opportunity to redeem their property (*Anglo California National Bank* v. *Leland, supra*), and the 1943 act as here construed fully harmonizes with that policy while protecting the state's tax claims.

■ Likewise without merit is respondents' contention that the declared purpose of certain other legislation adopted in 1943 (Stats. 1943, ch. 362, pp. 1598-1599) relating to real property taxes must be the measure of the purpose of the 1943 act here in question. Without reciting respondents' detailed argument as to the design of that other legislation to avoid conflict between the laws of this state and the federal Soldiers' and Sailors' Relief Act of 1940, as amended, suffice it to say that the object of that comprehensive plan would seem to have been accomplished by that enactment and without thought of correlation with the 1943 act here involved, which was placed in an entirely different chapter of the 1943 statutes (ch. 932, p. 2804) and presumably was adopted for an independent purpose. As so viewed the language of the 1943 act *postponing and suspending the operation* of section 3511.3 of the Revenue and Taxation Code sustains its interpretation as designed to enable delinquent taxpayers, whose

financial status had been improved by wartime conditions, to redeem their property in furtherance of the state's general tax rehabilitation program. It therefore follows that appellants were entitled to the relief demanded by virtue of the provisions of said act of 1943.

The order from which this appeal was taken is reversed, with directions to the trial court to grant the peremptory writ as prayed.

Shenk, J., Carter, J., and Schauer, J., concurred.

EDMONDS, J.—I cannot join in the determination of my associates that an enactment which postponed and suspended the operation of a statute nullified retroactively the prior legislation. Long approved rules of statutory construction require a contrary conclusion.

By definition, "postpone" means to defer, to put off, delay; "suspend," to postpone, to defer till later. (Webster's New International Dictionary (2d ed. 1941).) The courts have followed these dictionary definitions, and have added others such as "held in abeyance, temporarily inoperative, arrested, interrupted, stopped for a time." (*Olds & Whipple* v. *United States,* 22 F.Supp. 809, 819; see cases collected in 33 Words & Phrases (Perm. ed. 1940), Postpone, pp. 128, 129; 40 Words & Phrases (Perm. ed. 1940), Suspend, Suspended, pp. 917 et seq.) Certainly in every day usage "postpone" means to defer until later something which has not yet occurred. "Suspend," on the other hand, indicates that something already is in operation which is to be stopped for a time. But neither word has any retroactive connotation, and the plain meaning of the legislative declaration is that the sections of the 1941 legislation specified in the enactment of 1943 would have no further effect until June 1, 1945, and that the effectiveness of those sections not yet in operation would be postponed until that time.

Moreover, it is a fundamental rule of decision that a law will not be construed as having retroactive effect unless the act clearly, by express language or necessary implication, indicates that this was the legislative intention. (*Estate of Childs,* 18 Cal.2d 237, 246 [115 P.2d 432, 136 A.L.R. 333]; *Krause* v. *Rarity,* 210 Cal. 644, 655 [293 P. 62, 77 A.L.R. 1327]; *Berg* v. *Traeger,* 210 Cal. 323, 325 [292 P. 495];

*Callet* v. *Alioto,* 210 Cal. 65, 67 [290 P. 438]; *In re Cate,* 207 Cal. 443, 448 [279 P. 131]; *East Bay Mun. Utility Dist.* v. *Garrison,* 191 Cal. 680, 692 [218 P. 43]; *Estate of Potter,* 188 Cal. 55, 65 [204 P. 826]; *Estate of Frees,* 187 Cal. 150, 156 [201 P. 112]; *O'Dea* v. *Cook,* 176 Cal. 659, 662 [169 P. 366]; *Gurnee* v. *Superior Court,* 58 Cal. 88, 91; *American States W. S. Co.* v. *Johnson,* 31 Cal.App.2d 606, 613 [88 P.2d 770]; *Bank of America* v. *Burg Bros.,* 31 Cal.App.2d 352 [88 P.2d 196]; 59 C.J. [Statutes, §§ 692, 694, 696] 1159-1171; 50 Am.Jur. [Statutes, § 478] 494-501; 23 Cal.Jur. 629.) Yet the decision in this case is based upon a statement directly to the contrary. It is said: "The 1943 act contains no reservation in its general language which would give it only prospective operation, and if it had been so intended, it would have been the simple procedure for the legislature to have so provided by express recital." This can only mean that a statute is now to·be construed as having retroactive effect unless the Legislature expresses a contrary intention.

Also, in my opinion, the decision in the present case violates another well settled rule of statutory interpretation. If a statute is susceptible of two constructions, one of which will raise serious and doubtful questions as to its constitutionality, a court must presume that the Legislature intended the construction which will render the statute free from doubt as to its validity. (*Shealor* v. *City of Lodi,* 23 Cal.2d 647, 653 [145 P.2d 574], quoting from *Miller* v. *Municipal Court,* 22 Cal.2d 818, 828 [142 P.2d 297]; and see cases collected in 16 C.J.S. [Const. Law, § 98] 234-246.) The Constitution of this state expressly prohibits the Legislature from making a gift of any public money or thing of value. (Const., art. IV, § 31.) After title to the property in question was transferred to the state, the petitioners had no right of redemption (§ 3511.3, *supra*); the deed of the county tax collector had conveyed "the absolute title to the property, free of all encumbrances" except liens for certain taxes (Rev. & Tax. Code, § 3520. See, also, *Mercury Herald Co.* v. *Moore,* 22 Cal.2d 269, 273 [138 P.2d 673, 147 A.L.R. 1111].) For present purposes, it is sufficient to point out that for the Legislature to allow private individuals to obtain property to which the state had acquired title for an amount generally less than its present market value is prima facie within the constitutional prohibition. The rule is well established that the right

of the state to the proceeds of taxation, when once vested, cannot be impaired by subsequent legislation, and the decisions holding that the Legislature may not retroactively reduce the amount of the inheritance tax (*Estate of Potter, supra,* at p. 60; *Trippet* v. *State,* 149 Cal. 521 [86 P. 1084, 8 L.R.A.N.S. 1210]; and *Estate of Stanford,* 126 Cal. 112 [54 P. 259, 58 P. 462, 45 L.R.A. 788]) rest upon the same principles as those governing the present one.

My associates distinguish the inheritance tax cases upon the theory that the court is now concerned only with "a change in the method of disposing of tax-deeded property," involving nothing more than a preference of the former owner over a third party purchaser. But to retroactively apply the statute of 1943 would, in many cases, require the state to return property to its former owners for far less than would be derived from sales to third persons. Although it may be conceded that the Legislature did not enact the 1941 rehabilitation provisions for the purpose of establishing the state in the real estate business, and the state's primary concern is for the collection of taxes, the fact remains that in carrying out the plan to expedite the return of tax-deeded property to the rolls, the incidental effect, in many instances, would be to vest absolutely in the state title to property the value of which greatly exceeds outstanding tax claims. The mere fact that the Legislature expressed no policy or purpose to avail itself of the overage is immaterial.

Further doubt as to the constitutionality of the statute as it is now construed arises from the fact that to give the enactment a retroactive effect would render uncertain the validity of sales made by the state of property deeded to it from June 1, 1942, the effective date of section 3511.3 of the Revenue and Taxation Code, and August 4, 1943, when the legislation now before the court took effect. For example, if the state, after the petitioners, for the purpose of redemption, had offered to pay all taxes, interest and penalties due, sold the property in question to a third person, the latter's title would have been impaired by the present decision for the reason that, according to such determination, the state was bound to allow a redemption and, therefore, did not have "absolute title to the property" as provided in section 3520 of the Revenue and Taxation Code. Nor is this defect aided by the judicial limitation that the 1943 statute shall not operate retroactively as to property sold by the state prior to an exercise of the right of redemption. It would seem clear that the

Legislature, if it had intended a retrospective effect, would have expressly protected third party purchasers taking title in reliance upon sections 3511.3 and 3520, *supra;* its omission in this connection can only be attributed to its clearly expressed intent that the 1943 enactment be only of prospective operation. But certainly, under these circumstances, the court should adopt that construction of the statute which without doing violence to the language used, will remove all doubt concerning its constitutionality even though another interpretation is equally reasonable. (*Miller* v. *Municipal Court, supra.*)

Furthermore, statutes *in pari materia* enacted by the Legislature of 1943 clearly show the purpose of enacting chapter 932 and an intention that it should be prospectively applied. By an amendment to the federal Soldiers' and Sailors' Civil Relief Act of 1940, effective October 6, 1942, Congress unqualifiedly prohibited the sale of property owned by military personnel to enforce the collection of taxes. (50 U.S.C.A. App., 1943, § 560.) Legislation having the effect of in part avoiding conflict between the federal act and the Revenue and Taxation Code provisions was enacted by the Legislature in 1943 (Stats. 1943, chap. 362), for that express purpose. It is reasonable to assume that chapter 932 was also enacted with the same end in view. My associates, however, declare that the legislative purpose in postponing and suspending the termination of the right of redemption was in furtherance of the state's general tax rehabilitation program. To me, such reasoning is untenable for if, in 1941, the Legislature enacted section 3511.3 and the other related code provisions in order to restore tax-deeded property to the rolls, it would not later suspend the operation of those provisions for the same purpose. The reasoning is contradictory, and may not be justified upon the assertion that in 1943 the economic status of delinquent taxpayers was different from what it was in 1942, the effective date of section 3511.3. If the purpose of that section was to restore property to the tax rolls, the subsequent suspension and postponement of its operation would limit that purpose.

As I read the statutes now before the court, the Legislature, by provisions enacted in 1941 and effective in 1942, for the purpose of establishing a comprehensive tax rehabilitation program, determined that the title to property upon which taxes should become delinquent was to vest absolutely in the state upon execution of the tax deed, the property owner

thereby being relieved of all liability for the taxes assessed. In the later legislation I find no purpose to favor the former owner regardless of loss thereby to the state consequent upon its inability to realize the full value of its "absolute title." In my opinion, the conclusions of a majority of the court rest upon an overcomplication of the controversy. They are based upon an asserted uncertainty in the meaning of a statute the terms of which, to me, are clear and unmistakable and a determination of the effect of that uncertainty contrary to well settled rules of statutory construction.

Traynor, J., concurred.