[L. A. No. 19624. In Bank. July 31, 1947.]

THE PEOPLE, Appellant, v. JAMES MAXFIELD et al.,
Respondents.

Robert W. Kenny, Attorney General, E. G. Benard, Deputy Attorney General, Harold W. Kennedy, County Counsel, and A. Curtis Smith, Deputy County Counsel, for Appellant.

Kenneth W. Kearney for Respondents.

EDMONDS, J.—The state claims the rents which it charges were received from certain real estate during the period between the dates of tax deeds made by the county of Los Angeles because of tax delinquencies, and the times of redemptions of the properties. A demurrer to the state's complaint was sustained without leave to amend, and the appeal from the judgment which followed this ruling presents for decision only the question of law which concerns the construction to be given the applicable statutory provisions.

The amended complaint alleges that on July 1, 1943, certain parcels of land were conveyed by the tax collector of Los Angeles County to the state. The deeds were recorded on November 8, 1943, and the state alleges that it was the owner of these parcels from that date until each of them was redeemed in full by the former owner. The latest redemption was in June, 1944. According to the complaint, from the date of the deed to each lot until its redemption, the former owner "took the rents, issues and profits from said parcels . . . and have at all times retained said rents, issues and profits," the exact amount and value of which is unknown to the state.

The decisive question is whether the state, after the redemption of the property, has the right to an accounting and to the payment of rents collected by the redemptioners during the period of time the state was the owner of the properties. It bases its rights to the income from them upon sections 3651 and 3652, Revenue and Taxation Code, which provide:

"3651. After the recording of the deed to the State, the State has exclusive power through the Controller to rent tax-deeded property and to receive all proceeds arising in any manner from the property except proceeds from a transaction terminating the right of redemption, if the right of redemption has not been terminated, or from a sale of a parcel of tax-deeded property."

"3652. The Controller or any person designated by him may exact an accounting of the proceeds from tax-deeded property from: (a) The former owner of the property.

"(b) Any person having an interest in the property.

"(c) Any person in actual or constructive possession of any part of the property."

The redemptioners contend that upon payment of a tax delinquency, all rights of the state, including that to collect accrued rents and profits, cease. This is the construction which must be given to the quoted statutes, it is said, when they are read in conjunction with sections 4112 and 4107 of the Revenue and Taxation Code which provide: "On request of the redemption officer, the Controller shall issue a receipt which may be recorded in the recorder's office like a deed. This record has the same effect as a deed of reconveyance of the interest conveyed by the sale or deed to the State." (§ 4107) "On redemption, the deed becomes null and any interest acquired by virtue of the sale to the State ceases." (§ 4112.)

The deed to the state, executed pursuant to the statutory requirements, conveys absolute title, free of all encumbrances, except certain specified liens. (Rev. & Tax. Code, § 3520.) It is not the same title as that of a private purchaser, because the purpose of the conveyance is not the acquisition of the property but the collection of the taxes. (*Anglo Cal. Nat. Bank* v. *Leland*, 9 Cal.2d 347, 353 [70 P.2d 937].) However, the only difference between the state's title and that of a private purchaser is the privilege of redemption. "Upon execution of the deed [to the State] the property owner forfeited all rights in the property except the privilege of redeeming it at any time before the state disposed of it." (*Mercury Herald Co.* v. *Moore*, 22 Cal.2d 269, 273 [138 P.2d 673, 147 A.L.R. 1111].) The state's title is absolute, but subject to defeasance should the former owner exercise his privilege of redemption. The tax collector's receipt, authorized by section 4107 of the Revenue and Taxation Code, which is recorded "like a deed," is a reconveyance of an absolute title owned by the state and issues upon the performance of all conditions necessary for redemption.

Rights incident to ownership of property conveyed to the state are expressly provided for by the Revenue and Taxation Code. These include the right to possession (§ 3653); the right to rent or lease and receive the proceeds from the property (§§ 3651 and 3655); the right to exact an accounting of the proceeds of the property (§ 3652); the right to bring an action of unlawful detainer or ejectment (§ 3654); and the

right to sell the property at public auction to the highest bidder (§ 3476). These rights are no more limited than those of an individual who has title to real property. They cease upon the transfer of title but certain rights, such as that to rents and profits which accrued during the period of ownership, are personal and do not pass with the deed nor cease to be actionable upon the conveyance of the property. ■ Under section 4112 of the Revenue and Taxation Code the tax deed is not void from the beginning but only upon redemption; the state's interest in the land then ceases because title has passed to the redemptioner. At that time the right to possession of the land, and to lease or rent and receive the proceeds, is at an end. So also is the right to sell the property at public auction. ■ But a right of action which accrued during the period of ownership is not terminated by the redemption; the state is in the same position as that of an individual who conveys land to which he has title.

The case of *List* v. *Sandell*, 42 Cal.App.2d 505 [109 P.2d 376], relied upon the respondents, is not inconsistent with these conclusions. There the state leased tax-deeded property to a stranger. As part of the consideration for the use of the property, the lessee agreed to pay the state one-sixth of the crop to be grown. The former owner redeemed the property before the crop was harvested. As between the state and the former owner, it was held that the latter was entitled to share the crop with the tenant. The court applied the general rule that growing crops remain a part of the realty until severed and, unless reserved in writing, pass with the title to the grantee. In *People* v. *Gustafson*, 53 Cal.App.2d 230 [127 P.2d 627], the court expressly declined to decide the precise question now presented for determination. And although *In re Mead-Haskell Co.*, 47 F.Supp. 997, holds that the right of the state to collect rents and profits is in the nature of a penalty and, therefore, they may not be collected from a trustee in bankruptcy after redemption, such a construction cannot be reconciled with fundamental principles incident to the ownership of land.

The Tax Redemption Termination Act (Stats. 1941, ch. 47, p. 131, and see Stats. 1941, ch. 290, § 49, p. 1432) effected a fundamental change in the taxation law. For the purpose of establishing a comprehensive tax rehabilitation program, the Legislature determined that the title to property upon which taxes should become delinquent was to vest absolutely in the

state upon execution of the tax deed. Accordingly, the appellant's complaint states a cause of action.

The judgment is reversed.

Gibson, C. J., Traynor, J., and Spence, J., concurred.

SHENK, J.—I dissent.

The complaint does not allege that in the period between the deed to the state and the redemption of the lands the state sought to obtain possession or that it entered into any agreements for the rental of the property, or exercised any rights of ownership conferred upon it by statute. Nevertheless, the state, after redemption, seeks an accounting and recovery of rents collected by the redemptioner during that period. What the rights of the state may be while title to unredeemed property remains in the state is not involved here.

Upon the redemption of the property the deed to the state became null and any interest acquired by virtue of the sale to the state ceased. (Rev. & Tax. Code, § 4112; *List* v. *Sandell,* 42 Cal.App.2d 505, 508 [109 P.2d 376].)

The majority arrive at the conclusion that, although none of the powers of ownership conferred by the statutory provisions were exercised prior to redemption, the state after redemption has a cause of action for an accounting and recovery from the former owner (the redemptioner) of the rents collected by him during the period when title was vested in the state. The failure of public officials to exercise the powers expressly conferred by law may deprive the state of the concomitant benefits flowing from the ownership vested by section 3520 of the Revenue and Taxation Code. (*People* v. *Gustafson,* 53 Cal.App.2d 230, 242-143 [127 P.2d 627].) In that case the state, after redemption, sought recovery from the former owner of the rental value of his use and occupancy during the period following the conveyance to the state. It was held that the state had only those attributes of ownership expressly conferred by statute, and that no power was vested in the state to receive or collect the rental value of the land from the former owner who without objection remained in possession.

The provisions of section 3520 and 4112 of the Revenue and Taxation Code, as well as of the other sections, notably 3476, 3651, 3652, 3653, 3654, and 3655, were a part of the law prior to the enactment of the Revenue and Taxation Code and any amendments thereto. They are substantial reenactments of

sections 3764, 3773, 3787 and 3817 of the Political Code, or portions thereof. At all times when those provisions were in effect it was recognized that the title acquired by the state of tax-sold property was not the same as that vesting in a private purchaser of lands, since the object of the tax sale to the state was not the acquisition of the property, but was the collection of taxes; that the policy of the law was to give a delinquent taxpayer every reasonable opportunity compatible with the rights of the state to redeem his property and to make his burden as light as possible. (*Anglo Cal. Nat. Bank* v. *Leland,* 9 Cal.2d 347, 353 [70 P.2d 937] ; *People* v. *Gustafson, supra,* 53 Cal.App.2d at page 234, citing *Dougery* v. *Bettencourt,* 214 Cal. 455, 462 [6 P.2d 499] ). In the *Anglo Cal. Nat. Bank* v. *Leland* case, at page 351, this court said in 1937 through Mr. Justice Edmonds: ''The settled policy of the law is to allow a delinquent owner to redeem his property (*Buck* v. *Canty,* 162 Cal. 226 [121 P. 924] ) and to make his burdens as light as possible''; and on page 353 is the following quoted with approval from *Walker* v. *Ferguson,* 176 Ark. 625 [3 S.W.2d 694], which cites in support thereof the case of *Board of Commrs.* v. *Lucas, Treasurer,* 93 U.S. 108 [23 L.Ed. 822] : '' 'The title acquired by the state, or an instrumentality thereof, at a tax sale is not the same as that vesting in a private purchaser, since the object of the purchase is not the acquisition of property, but rather the collection of taxes.' '' The sale of the land to the state is in the exercise of the sovereign power to collect the tax. (*Mercury Herald Co.* v. *Moore,* 22 Cal.2d 269, 272-273 [138 P.2d 673, 147 A.L.R. 1111].) Since the primary purpose of the statutes here considered ·is the collection of taxes, and not the acquisition of property or income therefrom, they should be given a construction favoring the taxpayer. (*People* v. *Gustafson, supra,* at p. 238.) Thus, upon redemption, as this court said through Mr. Justice Spence in 1945: ''All that the state is justly entitled to have is its tax money . . .'' (*Gartner* v. *Roth,* 26 Cal.2d 184, 190 [157 P.2d 361].) With this salutary policy in mind section 4112 of the Revenue and Taxation Code clearly means that after redemption as in this case all interest acquired by the state has terminated. That section provides: ''On redemption the deed becomes *null,* and any interest acquired by virtue of the sale to the State *ceases.*'' (Emphasis added.) In *List* v. *Sandell, supra,* [1941] 42 Cal.App.2d 505, the state claimed· after redemption the rental value of lands leased by the state

(share cropping lease) during tax delinquency and prior to redemption. The claim was denied. It was held that under section 3817 of the Political Code (now Rev. & Tax. Code, § 4112) the state could not recover. The court said at page 508: "When upon redemption, the rights of the state acquired under a tax sale become *null* and *void*, and *all right, title, and interest*, acquired by virtue of the tax sale, shall *cease and determine*, it leaves no rights remaining in the state, and certainly no rights to the crops growing upon the redeemed property, of which, according to the stipulation of the parties, plaintiff has been the owner, and in possession, ever since redemption was made." In the absence of the exercise of any of its statutory rights and powers of ownership, any further exaction by the state is in the nature of an additional penalty. (*In re Mead-Haskell Co.*, 47 F.Supp. 997.) In the latter case the claim of the State of California against the bankrupt owner's estate for rents collected by the trustee-redemptioner during the state's period of ownership was denied.

It is apparent that the majority, by a conclusion that the ownership rights conferred upon the state "are no more limited than those of an individual who has title to real property" have attempted to apply "fundamental principles inherent to the ownership of land." Those principles in an unlimited sense have not been deemed to apply to state ownership of tax-sold property, but such ownership has always been considered distinct from that vesting in a private purchaser. That is, the rights and powers of the state as owner are those expressly conferred by statute, and they must be exercised before the benefits of such ownership attach.

It is, of course, true that the return to the tax rolls of property sold to the state is in the public interest (*Anglo Cal. Nat. Bank* v. *Leland, supra,* 9 Cal.2d at p. 352 and cases cited), and the provisions for termination of the right of redemption look to the accomplishment of that objective (*Mercury Herald Co.* v. *Moore, supra,* 22 Cal.2d at p. 272; *Gartner* v. *Roth, supra,* 26 Cal.2d at p. 188). Further acceleration of restoration of lands to the tax rolls is induced by appropriate changes in the redemption statutes. The majority refer to the Tax Redemption Termination Act of 1941 as having effected a fundamental change in the taxation law. In this connection it is stated that "for the purpose of establishing a comprehensive tax rehabilitation program, the Legislature determined that the title to property upon which taxes should become

delinquent was to vest absolutely in the state upon execution of the tax deed." The provision that the deed to the state conveys absolute title to the property, free of all encumbrances, etc., was first enacted into law by the Statutes of 1895, p. 329 (Pol. Code, § 3767). It was not, therefore, a novel part of the tax rehabilitation program indicated by the Tax Redemption Termination Act of 1941. The amendments to the redemption statute thereby enacted should not effect by mere implication such vital changes in the settled statutory rights and powers of the state as owner of tax-sold lands as will be brought about by the majority view. Changes in that respect, even though they may indirectly tend to expedite the restoration of tax-sold lands to the tax rolls, should be made, if at all, by the Legislature.

In my opinion the judgment should be affirmed.

Carter, J., and Schauer, J., concurred.