Appellate Department, Superior Court, Los Angeles

[Crim. A. No. 2429.   Sept. 8, 1948.]

THE PEOPLE, Respondent, v. EDWARD JOSEPH
HIGGINS, Appellant.

Mark F. Jones and W. L. Englehardt for Appellant.

Ray L. Chesebro, City Attorney, Donald M. Redwine, Assistant City Attorney, and Walter C. Allen, Deputy City Attorney, for Respondent.

THE COURT.—The defendant has appealed from the judgment imposed as a consequence of his conviction upon the charge that he had driven a motor vehicle "after his operator's and chauffeur's license and his driving privileges had been suspended and revoked." The record before us discloses that the defendant's operator's license had been revoked in 1942, following his conviction upon a charge of grand theft (auto). In August of 1946, the defendant filed with the Department of Motor Vehicles an application for a new operator's license. Reference was made to this application in a letter from the department addressed to the defendant in January, 1947, in which an affidavit form was enclosed. Under date of August 7, 1947, a temporary license was issued the defendant, bearing upon its face the notation that it would become void 60 days from the date of its issuance. More than 60 days thereafter, on February 17, 1948, the defendant drove a motor vehicle upon a public highway, an act which led to the filing of the complaint under which he was convicted. We have concluded that while under these facts the defendant appears to be guilty of a violation of section 250 of the Vehicle Code, he was not guilty, as charged, of having violated section 332 of that code.

Section 250, so far as it is of present interest provides: "(a) It is a misdemeanor for any person to drive a motor vehicle upon a highway unless he then holds a valid operator's or chauffeur's license . . ." The maximum punishment for a violation of this section is set by section 763, Vehicle Code, as either a fine of $500, or imprisonment in the county jail for six months, or both. Section 332 covers some of the same territory covered by section 250, but permits a greater punishment for an offense in the field to which it applies: "Any person who drives a motor vehicle upon a highway when such person has been refused a license by the department or after his operator's or chauffeur's license or his driving privilege has been suspended or revoked is guilty of a misdemeanor and upon conviction thereof shall be punished by imprisonment

in the county jail for not more than one year or by fine of not more than one thousand dollars ($1,000) or both.''

It is at once apparent that a literal interpretation of section 332 is not possible, because such a construction would bring the section in conflict with other clear provisions of the same code. We find in section 291, for example, that a court which convicts a person of a violation of a provision of the code relating to speeding, may suspend that person's license for not to exceed 30, or 60, days, or six months, depending upon whether it is the first, second or subsequent conviction. One whose license was suspended on March 1 for a maximum of 30 days would violate section 332, read literally, if he drove at any time during April, for although it would be after the period of suspension was over, it would also be, chronologically, after the suspension. With respect to a revocation of a license upon the ground of grand theft (auto), section 304 of the code states: ''The privilege revoked under subdivision (a) hereof shall not be renewed until the expiration of one year after the date of such revocation . . .'' Other sections recognize that after a year a new license may be issued to a person whose license has been revoked. Note the provisions of sections 265(d), 270(b), 302 (''A new license may be obtained only as provided in this code''), and 305(c). It is manifest that it was not intended by the provisions of the code authorizing the revocation of operators' licenses that the person whose driving privileges have been terminated shall never thereafter be permitted to drive. Yet a literal application of the words of section 332 would require just that result. Suppose that the defendant in this case had been issued a new operator's license in December, 1943, as would have been possible under the code sections noted above. Without more, then, during the four-year period from December, 1943, to the same month in 1947, when his new license would expire by virtue of section 276, he would have a valid operator's license, but could not drive without violating the letter of section 332, for all that period would be ''after'' his operator's license had been revoked. His operation in February, 1948, would be both after his earlier license had been revoked and after his new license had expired.

We are confronted by a case in which we must determine the meaning of section 332. Seeking to make effective the legislative intent, as we must do (*Los Angeles County* v. *Frisbie* (1942), 19 Cal.2d 634, 639 [122 P.2d 526, 529]; *Gartner* v. *Roth* (1945), 26 Cal.2d 184, 190 [157 P.2d 361,

364]), we are forced to conclude that section 332 should not be applied literally, and as it has frequently been held that a literal interpretation is to be avoided when it conflicts with the manifest legislative intent (for ·examples, see *Robbiano* v. *Bovet* (1933), 218 Cal. 589, 595-596 [24 P.2d 466, 469]; *In re Mitchell's Estate* (1942), 20 Cal.2d 48, 51 [123 P.2d 503, 504]; *Dickey* v. *Raisin Proration Zone No. 1* (1944), 24 Cal. 2d 796, 809 [151 P.2d 505, 508, 157 A.L.R. 324]), another than a literal construction must be found. We cannot, of course, refer our problem to the Legislature with a request that it amplify section 332, more clearly to express its meaning. We have no alternative but to resort to judicial construction, that is, to judicial legislation.

In this case the amount of redrafting to be done is not extensive. It is not to be doubted, we have concluded, that the act which section 332 is meant to prohibit under the severer penalty there provided, is the operation of a motor vehicle between the time that driving privileges—of which the license is but evidence (*People* v. *Noggle* (1935), 7 Cal. App.2d 14, 17 [45 P.2d 430, 432])—are suspended or revoked, and the time that they are restored again. In the case of a suspension, the period covered by the section would end when the period of suspension is ended. In the case of a revocation, the period would end when once again the privilege of driving had been restored. If thereafter that privilege terminates for any reason, the public is not without protection, for further driving is in violation of section 250. It follows that the defendant was wrongfully convicted under a complaint charging a violation of section 332, for he had had his operating privileges restored since his operator's license had been revoked in 1942.

Because of the judgment we intend to make we find it advisable to refer to the further contention of the defendant that he had a valid license when he operated a motor vehicle in February, 1948. This contention is based upon the argument that by reason of the 1947 amendment to section 254, Vehicle Code, a temporary license is good until the Motor Vehicle Department acts, one way or another, upon a pending application. Section 254, with the significant words of the 1947 amendment enclosed in brackets, reads as follows: "The department may issue to any person applying for an operator's license, a temporary operator's license, and to any person applying for a chauffeur's license, a temporary chauffeur's

license. A temporary license shall permit the operation of a motor vehicle upon the highways for a period of 60 days, when the licensee has such license in his immediate possession, [and while the department is completing its investigation and determination of all facts relative to such applicant's right to receive such license. Such temporary license shall be invalid when the applicant's license has been issued or refused.]''

We are satisfied that defendant's contention rests upon an untenable premise. Prior to 1947, the temporary license provided for by this section was a permit to operate only so long as two conditions concurred: (1) the 60 days had not expired; (2) the license was in the immediate possession of the operator. A third concurrent condition was added in 1947, viz., the pendency of the investigation and determination referred to. Both ''when'' and ''while'' are here used to mean ''during the time that.'' The specific period of 60 days may be shortened, either, in effect, by the failure of the operator to have his license in his immediate possession or by the action of the department in granting or refusing a license. The temporary license may not be given life beyond 60 days by the act of the operator in carrying his license with him nor by the failure of the department to conclude its investigation.

The judgment is therefore reversed with directions to the trial court to dismiss the action for the purpose of filing an amended complaint, if the People so request.